## DELAIGLE *vs.* DENHAM.

1. The decree in this case was in accordance with the finding of the jury
2. To charge in an equity case that the complainant must show the principal point in dispute by clear and conclusive proof, where the defendant denied the right claimed, was error; especially where the answer of the defendant was not under oath, and discovery was waived.

(a) Although the court committed some errors in this case, yet the verdict was required by the evidence, irrespective thereof, and the judgment is therefore affirmed.

Decree. Judgment. New trial. Before Judge SNEAD. Richmond Superior Court. April Adjourned Term, 1880.

Reported in the decision.

A. C. HOLT; J. C. C. BLACK; H. K. McCAY, for plaintiff in error.

VERDERY & VERDERY, for defendant.

JACKSON, Chief Justice.

This was a bill filed in Richmond superior court by Nicholas DeLaigle against Charles J. Denham, to compel the latter to reconvey to the former certain city lots in Augusta, which had been absolutely conveyed, but for the purpose of securing a debt and in equity a mortgage, as was insisted by complainant, and which had been sold for enough to pay the debt, with a large surplus over. The lots were first mortgaged on July 29th, 1867, by DeLaigle to Denham, to secure the debt, but on his inability to pay it at maturity, on the sixth day of January, 1868, the absolute conveyance was made, the note delivered up, the mortgaged agreed to be canceled, and the following agreement executed cotemporaneously with the execution of the deed, on the sixth day of January, 1868 :

"STATE OF GEORGIA—Richmond county.

"Know all men by these presents, that I, Charles J. Denham, of the county and state aforesaid, having this day purchased from Nicholas DeLaigle the eighteen lots of land conveyed to said Nicholas by the executors of Charles DeLaigle by deed of record in the clerk's office of Richmond superior court, book V. V., folios 258 and 259, do hereby agree to convey to him, the said Nicholas DeLaigle, his heirs or assigns at any time within six months from the date hereof the said eighteen lots without warranty of title, upon the payment to me, my heirs, executors or administrators, of the sum of eleven hundred and seventy

dollars, but this privilege of repurchasing the property is not to be extended unless by instrument in writing.

" And I, the said Nicholas DeLaigle, covenant and agree to and with said Charles J. Denham, that in the event that I should not redeem the said eighteen lots of land, that I will, on demand, pay the said Charles J. Denham the sum of two hundred and seventy dollars.

"Witness our hands and seals, January 6th, 1868.

NICHOLAS DELAIGLE,     [L. S.]

C. J. DENHAM."     [L. S.]

In presence of W. H. BLOUNT,

FRANK H. MILLER, *Notary Public.*

The following questions to the jury and their answers thereto were then had under the act of 1876 :

"1. Was the time for the privilege of repurchasing this property to be extended under the contract between the parties beyond the sixth day of January, 1868, unless in writing? Answer—No. 2. Was the debt of $900.00 due by DeLaigle to Denham, extinguished by the deed of January, 1868? In other words, did DeLaigle owe Denham said $900.00 after that time? Answer—No. 3. Was there any instrument in writing between Denham and De-Laigle by which the time for repurchasing was extended? Answer—No. 4. Was the note of $900.00 upon the making of the deed sixth of January, 1868, surrendered by Denham, or agreed then and there to be surrendered? Answer—Yes. 5. How long has Denham, and those claiming under him, been in possession of said eighteen lots of land in controversy? Answer—Has been in possession since 1868. 6. Did Mr. Denhan take possession of the lots of land after the expiration of the six months from January, 1868, and DeLaigle know of that possession, and did he object to the same? Answer to 1st—Yes. Answer to 2d—He did. Answer to 3d—No. 7. Was the transaction on the sixth day of January, 1868, at F. H. Miller's office, intended to be a sale or a mortgage? Answer—We find it a sale. 8. Did Nicholas De-Laigle know of the improvements going on upon the said lots referred to in said bill and answer? Answer—Yes,

9. Did Nicholas DeLaigle ever deliver up to Charles Denham the chain of title to the eighteen lots, at the time of the execution of the deed on January 6th, 1868? Answer—Yes. 10. Was the sum of two hundred and seventy dollars mentioned in the writing dated January 6th, 1868, signed by plaintiff and defendant, or any part thereof, usury? or was it for the privilege of repurchasing said land by plaintiff? Answer—For the privilege of repurchasing said land. 11. Was the conveyance of January 6th, 1868, from DeLaigle to Denham a security? Answer—No. 12. Have any of said lots been sold by Denham? If so, how many, and when and what has defendant received from said sales? Answer—Seventeen have been sold for $3,030.00, $20.00 of said amount still due; and one lot unsold, valued at $150.00. 13. If any of said lots are unsold, what is the value of the same? Answer—One lot unsold; value, $150.00 14. If you find that said conveyance was a sale and not a security, was the consideration therefor usurious? Answer—We find it a sale, but usurious."

Upon these findings the judge, on the seventh day of June, 1880, upon motion of defendant's solicitors, entered the following decree, to-wit:

"In consideration of the verdict rendered during the present term, in the above stated cause, upon certain questions of fact in dispute, submitted at the hearing thereof to the jury; and in consideration also of other facts alleged in the pleadings, not in dispute; and upon consideration of the argument presented after said verdict, it is considered, adjudged and decreed: That the instrument of conveyance between said Nicholas DeLaigle and said Denham, bearing date the sixth day of January, A. D., eighteen hundred and sixty-eight, transferring the land in the bill in this cause described to said defendant in fee simple, was and still is a valid conveyance to him of the title thereto, for his own uses and purposes; and was not, in law or in equity, a security or mortgage.

Delaigle *vs.* Denham.

"And further adjudged and decreed : That the complainant, in respect to the usury in said deed, is barred by the statute of limitations of all right to said land, or any part thereof, and also to the proceeds of sale of the same ; and is not entitled to recover against said defendant either said land, or proceeds of sale thereof, or any part thereof.

"It is further decreed : That the proceedings in this case be enrolled among the records of this court, and that the plaintiff do pay the costs therein."

To this decree complainant, by his solicitors, at the same term of the court at which said case was tried, excepted, and duly tendered his bill of exceptions, which was allowed, certified to be true, and ordered to be placed on the record.

At the same term of the court the complainant moved the court to have the verdict rendered in said cause set aside and a new trial granted to him, the grounds of his motion being as follows, to-wit :

1. Because the judge erred in refusing to charge the jury the second written request submitted to him by counsel for the complainant, to-wit: " Inadequacy of consideration is a strong circumstance to be considered in favor of regarding such a transaction as the creation of a mortgage. (Equity will never sanction an arrangement by which the right of redemption is surrendered without adequate consideration; that is to say, it must be for a consideration which would be deemed reasonable if the transaction were between other parties dealing in similar property in its vicinity; any marked undervaluation of the property in the price paid will vitiate the proceeding)." The error herein complained of being the refusal of the judge to charge so much of the above request as is embraced in the brackets.

2. Because the judge erred in refusing to charge the third written request submitted to him by counsel for complainant, to-wit : " The question whether such a trans-

action—that is, a conveyance of land and the contemporaneous execution of a bond to reconvey the land upon the payment of the consideration of the conveyance—creates a mortgage or a mere contract for repurchase, is one of fact (and if doubtful upon the proof, should be decided in favor of its being a mortgage)." The error herein complained of being the refusal of the judge to charge so much of the request as is embraced within the brackets.

3. Because the judge erred in giving in charge to the jury the following written request, made by counsel for the defendant, to-wit: "If the jury believe that at the time of the execution of the deed of January, 1868, in the office of F. H. Miller, Esq., that the note of nine hundred dollars given by DeLaigle to Denham was delivered up, that the title deeds to the property made by the executors of DeLaigle to Nicholas DeLaigle were also delivered up to Denham, and the debt extinguished at that time, then the transaction was not a mortgage, because a mortgage cannot exist without a debt."

4. Because the judge erred in giving in charge to the jury the following written request made by counsel for defendant, to-wit: "A deed absolute on its face, and accompanied with possession of the property, shall not be proved at the instance of the parties by parol evidence to be a mortgage only, unless fraud in its procurement is the issue to be tried; the fraud alluded to is fraud in procuring the deed, and not fraud in claiming the transaction to be a deed. If you believe, therefore, that possession of the property accompanied this deed, and that the possession was known to and acquiesced in by DeLaigle, then the transaction was not a mortgage but a sale, and parol testimony will not be regarded by you in denial of the instrument."

5. Because the judge erred in giving in charge to the jury the following written request made by counsel for defendant, to-wit: "Gross inadequacy of price is not of itself any evidence that the transaction was a mortgage.

If you should even find from the testimony that there was such inadequacy, such inadequacy may only be considered among other circumstances in arriving at a conclusion—if you should believe that it was the purpose of the parties to effectuate a sale, it matters not how great the inadequacy is."

6. Because the judge erred in giving in charge to the jury the following written request made by counsel for defendant, to-wit: "When the answer of the bill denies the right to redeem, proof that the instrument was not a sale must be clear and conclusive."

7. Because the judge erred in charging the jury as follows, to-wit: "But where, as in this case, there is an instrument which is a deed on its face and an obligation to reconvey, signed by both parties at a fixed sum and at a fixed time, and that time not to be extended except in writing, it is *prima facie* a conditional sale—that is, the presumption arises from the face of the papers that it is a sale and not a mortgage. It is, however, but a presumption, which may be overcome by satisfactory proof that it was a mortgage."

8. Because the judge erred in charging the jury as follow, to-wit: "If Denham went into possession under the deed, with the knowledge of DeLaigle, and remained in peaceable possession for a number of years, the presumption is that that possession was a rightful one, and is what the terms of the deed purport it to be, under a sale of the land.

9. Because the judge erred in charging the jury as follows, to-wit: "The presumption of mortgage arises where there is an existing debt, a conveyance to secure it, and when once a mortgage the presumption is that it continues to be a mortgage; but this presumption may be repelled by facts showing that the debt was surrendered at the time of the subsequent conveyance. In that event, if such are the facts, then the burden is thrown upon DeLaigle to show that the deed is not to have the effect

of a sale, or conveyance, according to its terms.    And although the note and mortgage are not surrendered, if the evidence shows that the debt was absolutely extinguished, a simple right to repurchase within a given time by the payment of money does not make the conveyance a mortgage, for there can be no mortgage without some debt which it is given to secure."

10. Because upon the return of the jury to the courtroom for the purpose of being recharged upon the subject of the adequacy of the consideration, and also upon the subject of usury, the judge erred in adding to his original charge as follows, to-wit; to these words in said original charge, to-wit: "You can, to determine the intention, look to the consideration and see whether the price paid was adequate to the value of the land.    It is a circumstance only with other circumstances to which to look to find out the intention."    The following words, to-wit, "but if you do believe that the transaction was a sale, it makes no difference how inadequate the consideration was."

11. Because the judge erred in this, that in his preliminary remarks in his charge to the jury he cautioned them that there had been one mistrial in this case, and he wanted them now to make a verdict.

12. Because the judge erred in refusing to submit to the jury, to be passed upon by them, the following question requested to be submitted by counsel for complainant, to-wit: "If you find that the conveyance of January 6th, 1868, was a sale and not a security, was the consideration therefor adequate and fair—that is, would it, the consideration, have been reasonable if the transaction were between other parties dealing in similar property in its vicinity."

To the entering the decree on this verdict and to the refusal to grant the new trial on these grounds error is assigned.

1. The facts found by the jury in our judgment author-

ize the decree. Briefly stated, these facts are that the actual sale of the lots took place, the purchase money being the debt which was canceled, that all the title deeds were delivered up, that Denham went into possession in 1868 and held the lots, selling them and having them built upon and improved under the eye of DeLaigle, from that time to the date when the bill was filed, without protest or objection from DeLaigle, some nine or ten years; that DeLaigle failed to re-purchase or have the time extended pursuant to the contract, and that it was the intention of the parties to extinguish the debt and pass the title absolutely. On these facts the decree would necessarily follow, and the questions, therefore, are, were the issues properly submitted to the jury, and is their finding thereon supported by the evidence?

2. There can be no doubt, we think, that the court below committed error in certain portions of the charge complained of. In requiring the proof to be clear and *conclusive*, when the answer denied the right to redeem— the court erred. The answer was not under oath, discovery was waived, and even if it had been responsive to the bill under a prayer for discovery, all that equity would require to set it aside or overcome it, would be two witnesses, or even one with corroborating circumstances. The rule laid down by the court goes beyond even the rule in criminal cases. To convict requires satisfaction only beyond a reasonable doubt in cases of murder or arson; does equity, to overcome even a sworn and responsive answer demanded by the complainant, require more? Clearly not.

We think also, that inasmuch as the relation of these parties prior to this conveyance in 1868 was that of mortgagor and mortgagee, the court put the *onus* too strongly upon the mortgagor, to show that the latter transaction touching the same lands and the same debt was really a mortgage; and also, in regard to the effect of inadequacy of consideration, in cases where the mortgagee, though in possession, seeks to hold his possession under a subsequent

sale. 12 How., 151 ; 6 Otto, 332 ; 7 Cranch, 241 ; 2 Sum., 535.

Yet though we think that these errors were committed by the court, we do not see the necessity of sending the case back, or on the overwhelming evidence the verdict must be substantially as it is. Let the mortgagee assume the burden as strongly cast upon him as any court could require and it is carried here with ease. Not only the face of the deed, but the intention of the parties, testified to by the survivor as well as the counsel, who respectively drew and advised the transaction of the sixth day of January, and the facts that the title deeds were all delivered up, the mortgage to be canceled and the evidence of indebtedness extinguished, show that the transaction was a sale, so intended by the parties and understood by everybody else.

Besides all this, when we consider the shrinkage of values in real estate from the date of the sale to Delaigle, to the time when the mortgagee or vendee bought, and the fact that the latter, though he sold for over $3,000.00, and the price of his purchase was a debt of some thousand dollars, sold lot by lot at intervals from year to year for several years, as he could sell to advantage, while he purchased in bulk, and the entire testimony in the record, the price may well be considered adequate.

But beyond all this, when the transaction was all over, when Delaigle knew that Denham was holding adversely, not as mortgagee but as absolute grantee from him, and was selling off and improving the lots—when he was no longer *in vinculis* in any sense of the word, but *sui juris*, not being operated upon to make the conveyance of the sixth day of January, 1868. but for years after the deed was done—stood by and acquiesced in these acts of ownership and improvement without lifting a little finger of warning or objection, the doors of a court of equity will be closed to him, though not quite ten years may have elapsed. Those ten years—Code, §1964—are ten years of

v 65—32

quiet waiting without fraud in the mortgagor, not ten years in which he acts fraudulently in law by permitting the status of things completely to change, sales to be effected and improvements made, so as to render it impossible to place the parties in *statu quo*.

It must be noted, too, that the mortgagor is the movant and complainant here—it is he that invokes equity— and equity will not hear him when his demand is stale and within a fraction of a year of a legal bar of the statute of limitations, and when for nine years and more he stood by and acquiesced in a complete revolution of the condition of the estate he had bargained away.    In respect to usury in the deed, which the jury appear to have found in answer to one question and yet to have contradicted that finding in response to another, it is enough to say, first, that the proof is positive that there was no usury, but the additional sum was part of the consideration of the contract to repurchase; and secondly, that one may pay in property as well as in money a usurious debt; and when the intention is to pay and pass title, it is too late after nine years to move in relation to it—61 *Ga.*, 38; and the distinguished counsel who argued the case for the plaintiff in error, seemed so to think, for he declined to argue the point.

Believing that if sent back the facts would demand the same verdict substantially, and the principles of equity applied to them would necessitate the same decree, we carry out the oft repeated ruling of this court, that in such a case a new trial will not be granted over the judgment of the circuit court denying it, and the judgment is therefore affirmed.

Judgment affirmed.