## FELTON v. GRIER.

1. It being legally possible for the owner of realty to sell and convey it to another at an agreed cash price, and at the same time secure the right to repurchase, and become bound so to do, at a higher price payable in the future, the law will enforce such a transaction when actually made.
2. Though the transaction now under review in many respects very closely resembled a mere loan of money at a usurious rate of interest, secured by a deed to land, yet as there was direct and positive evidence warranting the special findings of fact to the effect that it was a bona fide case of bargain and sale with a contemporaneous agreement by the vendee to resell to the vendor, and a binding contract by the latter to repurchase, the verdict must be allowed to stand.
3. The requests to charge were substantially covered by the general charge given to the jury; and the instructions complained of, construed in the light of that charge, afford no cause for a new trial. Indeed, it is manifest that the jury clearly understood and deliberately passed upon the issues presented by the evidence.

Argued November 1,—Decided November 30, 1899.

Reargued January 17,—Opinion filed February 26, 1900.

Complaint.    Before Judge Butt.    Muscogee superior court.
September 1, 1899.

*Goetchius & Chappell*, for plaintiff in error.
*Charlton E. Battle*, contra.

LUMPKIN, P. J.    This was an action by Grier against Fel-
ton, upon 51 promissory notes of $14 each, and the plaintiff
had a recovery for the full amount apparently due thereon.
On the trial below, there was a " special verdict of the facts."
It was supported by clear, positive, and direct testimony ; and,
as a necessary consequence of the findings of the jury, it must
be assumed in this court that the actual truth of the case is as
follows:    Felton applied to Grier for a loan of $600, propos-
ing to secure the payment thereof by a deed to certain land.
Grier positively refused to lend Felton the money on any terms.
Some days subsequently, they entered into an agreement to
the effect that Felton was to sell and convey the land abso-
lutely to Grier at the price of $600, Felton reserving the right
to repurchase, and becoming bound to do so, by paying to Grier
$14 monthly for 60 consecutive months.    Accordingly, Felton
executed and delivered to Grier a deed to the land, and re-
ceived therefor $600.    He then made and delivered to Grier
60 purchase-money notes of $14 each, payable as above indi-
cated, and took from Grier a bond conditioned to make him a
title to the land upon the payment of these notes.    All the
foregoing stipulations were parts of one and the same trans-
action.    Nine of the notes had been paid before the action was
begun.    Felton's answer set up the defense of usury, it being
therein alleged that the transaction between himself and Grier
was a mere loan of money, at a usurious rate of interest, se-
cured by deed with bond for reconveyance upon payment of
the indebtedness evidenced by the notes.    There was some
testimony in support of the answer, but we must deal with the
case upon the facts established by the special verdict.    With-
out stating and discussing separately the several grounds of the
motion for a new trial, it is enough to say that they present for
decision the naked question:    Is it legally possible for an
owner of realty to sell it outright for cash, and at the same

time and as a part of the contract of sale secure the right to repurchase, *and become bound to do so*, at a higher price payable in the future; or, must such a transaction necessarily and inevitably be treated as one of borrowing money and securing its payment by a deed in the nature of a mortgage? After deciding this question favorably to the defendant in error, we granted the plaintiff in error a rehearing. Upon further deliberation, we are still of the opinion that the judgment we rendered was right. It may, without careful consideration, seem contrary to a great current of respectable authority, but, after examining many text-books and scores of cases, we feel confident that our decision is in accord with the true law, and not really in conflict with the best considered views we have encountered in our search for light. It is certain that there can be such a transaction as a sale with an agreement for a repurchase. All the books recognize the correctness of this proposition, and every man of common sense knows it is true.

Says Chancellor Kent: "The case of sale, with an agreement for a repurchase within a given time, is totally distinct and not applicable to mortgages. Such conditional sales or defeasible purchases, though narrowly watched, are valid," etc. 4 Kent's Com. (14th ed.) *144. The real difficulty, so frequently arising, is to determine whether, in a given instance, the parties intended a sale or a mortgage. In a note to the text-book from which we have just quoted is the following, and the same will be found copied in many judicial opinions and made the basis of the conclusions therein announced: "The test of the distinction is this: If the relation of debtor and creditor remains, and a debt still subsists, it is a mortgage; but if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the privilege of refunding, if he pleases, by a given time, and thereby entitle himself to a reconveyance, it is a conditional sale." See also 3 Pom. Eq. Jur. (2d ed.) § 1195. In a note the author cites a large number of "cases in which the transaction has amounted to a mortgage," and also numerous others which were "cases of sale and contract to repurchase." We have examined most of these cases of both

classes. Many of them and others of like kind are cited by coun-
sel for the plaintiff in error, and some of both classes apparently
sustain without qualification their contention that if, after the
transaction has become complete, the relation of debtor and
creditor still exists between the parties, it must necessarily be
regarded as a mortgage. There is a long line of cases sup-
porting the proposition, that where a grantor executes an ab-
solute conveyance and at the same time reserves the option or
privilege of repurchasing, without being under a binding ob-
ligation to do so, the mere retention of the right to repurchase
is not, of itself alone, sufficient to render the transaction a
mortgage. We of course assent to the correctness of this doc-
trine, but we do not concede that if the grantor bound himself
to repurchase, as in the present case, it would inevitably fol-
low there was no sale. Cases of the class last referred to are
not really in point, but, as the opinions in quite a number of
them refer approvingly to the test above referred to, they are
frequently cited as authority by those seeking to maintain a
position similar to that now occupied by counsel for the plain-
tiff in error. We do not think the rule as stated goes to the
extent often claimed. An analysis of it will, in our judgment,
bear out this assertion. The first proposition embraced in it
is : "If the relation of debtor and creditor remains, and a debt
still subsists, it is a mortgage." This language is applicable,
and we are sure was intended to apply, to cases wherein it ap-
peared that one person, being already indebted to another,
had made to the latter a conveyance of property, and the ques-
tion for determination was whether the conveyance was exe-
cuted for the purpose of paying the debt or merely securing
its payment. The use of the words "remains" and "still sub-
sists" strongly, if not necessarily, implies that there should
be a subsisting indebtedness at the time of executing the con-
veyance; and all the judges and law-writers agree that if that
indebtedness is not absolutely discharged by the conveyance,
the instrument should be regarded as a mortgage. In other
words, if that same debt, in any form, "still subsists," the con-
clusion must follow that the only object which the parties had
in view was to secure its payment, and, this being so, the con-

veyance could not be treated as effectuating a sale.   Thus viewing the first clause of the rule, we accept it without hesitation and freely admit that in most, if not in all, of the numerous cases we have examined it has, upon the facts appearing, been properly invoked and enforced.

The second clause is as follows: "but if the debt be extinguished by the agreement of the parties, or the money advanced is not by way of loan, and the grantor has the privilege of refunding, if he pleases, by a given time, and thereby entitle himself to a reconveyance, it is a conditional sale."   The phrase "if the debt be extinguished" applies, as was said respecting the first clause of the rule, to a debt already subsisting.   Certainly it can not be understood as aptly referring to a debt coming for the first time into existence as a result of the very transaction by which this same debt is immediately to be extinguished.   Relatively, then, to a case like ours, the pregnant and all-important language of the rule is embraced in the phrase, "or if the money advanced is not by way of loan." The words just quoted and those following them manifestly relate to a case where two parties come together for an original transaction in which one advances and the other receives money, and the latter executes to the former a conveyance of property with right of repurchase.   If the money advanced is "by way of loan," the conveyance is, in effect, a mortgage only.   If not "by way of loan," but as the purchase-money of the property on the resale, the conveyance evidences an actual sale to him who agrees to resell.   In case the original seller binds himself to repurchase and gives promissory notes accordingly, the relation of debtor and creditor will, of course, exist between him and the other party; but it will be a newly-created relation and not an old one which "remains" or "still subsists."   In other words, the real test, in a case like the present, is whether the consideration of the notes is money loaned or the purchase-price agreed upon in the contract of resale.   If the former, the deed made by the party receiving the loan should be treated as a mere security deed; if the latter, such deed should be treated as one of bargain and sale.

We have not in our investigation overlooked or ignored the

fact that many judges and authors, in citing and applying the rule under discussion, have gone so far as to say, literally or in substance, that if after the execution of the deed the relation of debtor and creditor, for any reason arising out of the transaction of which such deed is a part, exists between the parties, it must be regarded as only a mortgage. Our reply is, that the distinguished jurists and commentators here referred to have extended this rule beyond its true intent and meaning. After much deliberation and careful study, we are satisfied that our analysis and interpretation of it is correct, and that, thus understood, "the test of the distinction" is free from the objections which are naturally suggested by an attempt to strain it so far as to defeat purposes which contracting parties deliberately seek to accomplish. We can not believe the author of this rule ever meant to assert that if two sane persons, legally capable of contracting, knowingly, voluntarily, and actually intended to make an agreement by the terms of which one should sell property to the other for cash, receive the money, and bind himself to repurchase at a higher price payable in the future, they could not possibly accomplish their design. Our quotation from the text of the great chancellor unquestionably sustains what we have just said; and in this connection we extract the following from the opinion of Chief Justice Marshall in Conway v. Alexander, 7 Cranch, 236, 237, which has been quoted and followed in dozens of opinions: "To deny the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands, defeasible by the payment of money at a future day, or, in other words, to make a sale with a reservation to the vendor of a right to repurchase the same land at a fixed price and at a specified time, would be to transfer to the court of chancery, in a considerable degree, the guardianship of adults as well as of infants. Such contracts are certainly not prohibited, either by the letter or the policy of the law." The renowned Chief Justice further says: "But as a conditional sale, if really intended, is valid, the inquiry in every case must be, whether the contract in the specific case is a security for the repayment of money, or an actual sale?" Herein lies the key to the whole matter; "for the ques-

tion finally turns, in all cases, upon the real intention of the parties, as shown upon the face of the writings or as disclosed by extrinsic evidence." See Pom. Eq. Jur., supra. The correctness of this statement is so well recognized and accepted, we regard it as altogether useless to multiply citations in support of it. The only proper course, therefore, to pursue in any given case is to ascertain what the parties actually intended, and then effectuate their intention. There is, perhaps, no rule of such universal application as to afford in every instance an absolute and conclusive test for finding out what the intention really was. Thomas on Mortgages, 23. "No conclusive test can be suggested to determine whether such transactions are mortgages or conditional sales, because the question arises under such varieties of circumstances that slight differences in these would make it inapplicable." 15 Am. & Eng. Enc. L. 780.

Mr. Pomeroy claims no more for the "criterion" he lays down than that it "furnishes a sufficient test in the great majority of cases." Our case is not one of the great majority, but of the small minority. We have endeavored to find and examine all the cases decided by this court from which we could hope to derive any aid in properly disposing of the case in hand. In numbers of them the cardinal rule that intention must control is stated and recognized, but none of them are strictly in point; for the precise question with which we are now dealing has never, so far as we can ascertain, been distinctly made in and ruled upon by this court. As above indicated, that question, reduced to its last analysis, is simply this: Is it a legal impossibility for two parties to agree between themselves that one shall buy property from the other for cash and contemporaneously contract to resell in consideration of the original seller's binding undertaking to repurchase on time at an advanced price? The question was certainly not passed upon in either *Spence* v. *Steadman*, 49 *Ga.* 133, or *Monroe* v. *Foster*, Id. 514, the two Georgia cases mainly relied upon by counsel for the plaintiff in error. In both, however, it was expressly ruled that it was legally possible for one to actually and truly sell to another unwilling to lend money but willing to purchase and allow the seller the privilege of repur-

chasing at a specified advance in price.　We shall not refer to other Georgia cases, because, for the reason given, none of them are specially helpful in arriving at a solution of the exact question now for determination.　The facts of the present case were stated at the outset.　Those facts, let it be remembered, were absolutely established by special findings.　We have no alternative but to accept them as the true and correct version of what transpired between Grier and Felton.　The transaction certainly resembled very closely a mere loan of money at a usurious rate of interest, secured by a deed to land.　The criteria, tests, etc., laid down in many of the authorities to which we have referred, suggest excellent reasons why the jury might have found that it was a transaction of that kind.　But they did not.　On the contrary, with strong evidence so warranting, and in answer to specific interrogatories designed to bring out the actual and precise truth of the matter, they found otherwise.　It is settled for us that Grier and Felton did exactly what the jury said they did, and we simply hold that it is within the power of rational and independent adults, if they really desire and intend to do a thing of this kind, to legally accomplish their purpose.　We can not undertake to say it is absolutely out of the question for such a transaction to take place.　It would be tantamount to holding that a fact actually accomplished was an impossibility.

*Judgment affirmed.　All the Justices concurring.*