## CRADDOCK *et al. v.* KELLY, administrator.

1. The petition as originally filed was against several defendants. It contained allegations which were appropriate and sufficient to constitute a cause of action in complaint for land. It also contained allegations appropriate to a petition - for equitable relief, such as the grant of injunction and appointment of a receiver to collect rents. The allegations were such as to indicate a purpose upon the part of the pleader to sue for the recovery of the land and likewise to obtain equitable relief of the character mentioned; but the only prayers were:  (*a*) for process requiring the defendants to appear at the next term of court and answer the complaint; (*b*) for the appointment of a receiver to collect and preserve the rents pending the litigation; (*c*) for general relief.  *Held:* Upon the trial it was not erroneous, over the objection that it would add a new cause of action, to allow the defendant to amend: (*a*) By alleging that he did not at an earlier date proceed with the administration and sale of the property, because of the existence of a homestead claim thereto asserted by the defendants, which did not expire until July, 1903, and that the defendants did not hold adversely to him until after the expiration of the homestead estate. (*b*) By striking all of the defendants except two, and electing to proceed against them for the recovery of the land and mesne profits only. (*c*) By adding a special prayer for the recovery of the land. See, in this connection, Civil Code, § 5104; *Eagle & Phenix Mills* v. *Muscogee Mfg. Co.*, 129 *Ga.* 712.

2. Amendments of the character mentioned in the first headnote were allowed during the progress of the trial. The several amendments cured any possible error which the court may have committed on the trial, before the amendments were allowed, by refusing on oral motion to dismiss the petition, on the grounds:  (*a*) that there was no equity in the plaintiff's petition; (*b*) that the plaintiff had an adequate remedy at law by a suit in ejectment; (*c*) that certain of the defendants originally declared against, other than those retained in the suit after amendment, were not served. The suit as amended was sufficient as a complaint for land, and it was immaterial whether other defendants, against whom no relief was sought, were served or not.

3. Where the head of a family dies after his property has been set apart, under the constitution of 1877, as a homestead for the use of his family, but before the termination of the homestead, the administrator upon his estate, as against beneficiaries of the homestead remaining in possession, does not, by virtue of an order from the court of ordinary, directing sale of the homestead property for the purpose of paying debts and for distribution, acquire a present right of entry.

(*a*) The ordinary has no jurisdiction, by order or otherwise, to deprive the members of the family of the use of the homestead property. Such an order to sell, granted under circumstances as enumerated, would remain inoperative until the termination of the homestead estate.

(*b*) Where, for the reasons indicated in the preceding divisions of this headnote, the administrator has not the right of entry until the termination of the homestead estate, but, within less than one year after

the right of entry accrues, his suit for recovery of the land is instituted against the members of the family who remained in possession under the homestead, it is not erroneous to refuse to dismiss his petition upon the ground of laches.

4. Upon the allowance of an amendment to the petition, it is not an abuse of discretion for the trial court to overrule a motion for continuance upon the ground of surprise, where it is not shown how the moving party is surprised, and that he is less prepared to go on with the trial than he would have been if the amendment had not been allowed. Civil Code, § 5128.

5. In complaint for land mesne profits may be recovered by an administrator against an heir of the intestate, claiming as a distributee of the estate, where the land has been wrongfully withheld by such heir from the administrator when it was necessary for the administrator to have possession thereof for the purpose of paying debts and making proper distribution among all the heirs of the deceased.

6. The uncontradicted evidence was of such character as to authorize the direction of the verdict rendered in this case.

Submitted May 28, 1907.—Decided February 1, 1908.

Equitable petition. Before Judge Pendleton. Fulton superior court. May 25, 1906.

On February 12, 1904, Charles H. Kelly, as administrator upon the estate of D. A. Craddock, instituted suit against Prince Albert Craddock, Eliza Williams, Moses Craddock, Jesse Craddock, Robert Craddock, and Savannah Franklin, alleging, in substance, that the defendants were in possession of a certain tract of land, claiming it as heirs at law of petitioner's intestate and adversely to petitioner, and refused to surrender possession after demand; that petitioner, as administrator as aforesaid, claimed title thereto and mesne profits of a reasonable value of $10 per month; that he was appointed administrator at the August term, 1893, of the court of ordinary of Fulton county; that it became necessary to have possession of said property for the purpose of administration, in order to pay the debts of the deceased, and for distribution; and that at the December term, 1893, of said court, petitioner obtained an order authorizing the sale of said property for the purposes aforesaid; and that the estate of said deceased and likewise the defendants, at the time of the institution of suit on the 12th of February, 1904, were insolvent, and that in order to pay the creditors it was necessary that the rents of the property be impounded. The prayers were, for (a) process requiring the defendants to appear at the next term of court, to answer the complaint of the

petitioner; (*b*) the appointment of a receiver to collect the rents during the pendency of the litigation; (*c*) general relief. Only three of the defendants were served, namely, Prince Albert Craddock, Eliza Williams, and Robert Craddock. As to the remaining defendants there was a return of non est inventus. No demurrer was filed; but the defendants who were served answered, setting up, that Eliza Williams and Prince Albert Craddock were in possession; that the defendants were the sole heirs of the deceased; that Eliza Williams and Prince Albert Craddock were holding possession of the premises as heirs at law of the deceased, and also that Prince Albert Craddock was holding possession thereof by virtue of an order of the court of ordinary of Fulton county, regularly granted at the August term, 1903, setting apart an undivided one-fourth interest therein to him as a year's support; and that said possession was by consent of the remaining heirs at law. They denied that the property was reasonably worth for rent $10 per month, but admitted that it was reasonably worth $8 per month. They also denied that the plaintiff was entitled to possession or mesne profits for the purpose of paying debts or for administration. It was further contended by the plea of the defendants, that the order of sale had been granted without any notice to them, and that Eliza Williams and Prince Albert Craddock had been in adverse possession, peaceably and continuously, for ten years; that during that time Eliza Williams had paid out $181.81 for taxes, $38.44 for street and sidewalk improvements, and $100 for repairs; and that on account of the laches in bringing suit, if petitioner was ever entitled to possession, he had lost the right. The answer was filed on March 2, 1904. On May 25, 1906, the case came up for trial, at which time the defendants moved orally to dismiss the petition for want of equity, it appearing that the only special relief prayed for was the appointment of a receiver; and that the petition had been filed on February 12, 1904, and the spring and fall terms of 1904, the spring and fall terms of 1905, and the January term, 1906, of said court having been held since the filing, and the plaintiff having failed, at any time from the filing of the suit up to the time of trial in May, 1906, to insist, by motion or otherwise, upon a hearing and an appointment of a receiver. The court overruled this motion, holding that the petition was good as an action in ejectment; to which ruling the defendants ex-

cepted. The defendants then moved orally to dismiss the petition, because the plaintiff had an adequate remedy at law by suit in ejectment. The court overruled this motion, to which ruling defendants excepted. The defendants then moved orally to dismiss the petition, on the ground that it appeared upon the face thereof that the plaintiff was guilty of laches, it appearing that the plaintiff was appointed administrator of the estate of D. A. Craddock at the August term, 1893, of the Fulton county court of ordinary, and that he obtained the order to sell the land therein described from said court at the December term, 1893, and that he did not file his petition in the suit now under consideration until February 12, 1904. The court overruled this motion and the defendant excepted. The defendant then moved orally to dismiss the petition, on the ground that the defendants therein named were sued jointly, and only three of them, Prince Albert Craddock, Eliza Williams, and Robert Craddock, had been served and made parties, as appears from the return of service. The court overruled this motion, and the defendants excepted. The plaintiff then amended his petition by alleging that "two of the defendants, Eliza Williams and Prince Albert Craddock, were in possession of the property sued for at the time of the bringing of the suit; and plaintiff prays that his case proceed against them for the recovery of the land described in the petition, and mesne profits, and dismissing the suit as to the other defendants." The defendants objected to this amendment, upon the ground that it changed the cause of action and made a new cause of action; which objection the court overruled, and the defendants excepted. The plaintiff then introduced certain documentary evidence: (a) Application by Kelly for letters of administration upon the estate of Craddock, and order appointing him administrator. (b) Letters of administration granted Charles H. Kelly as administrator of the estate of D. A. Craddock in Fulton court of ordinary, dated August 16, 1893. (c) Petition of Kelly as administrator, for leave to sell the land in dispute, as the property of the estate of Craddock; and an order, reciting due publication of notice, authorizing the sale, granted by the ordinary at the December term, 1893. (d) A mortgage from D. A. Craddock (the deceased) to C. H. Kelly & Brother, to the above-mentioned lot of land, dated July 25, 1891, given to secure a debt of $147.31; and three promissory

notes aggregating the above amount, signed by Craddock, payable to the mortgagees, executed in June and July, 1891. (c) The substance of a petition for injunction, filed in the superior court of Fulton county, September 18, 1903, by Prince Albert Craddock et al. *v.* Kelly, administrator, et al., wherein petitioners claimed title to the property, and prayed that Kelly as administrator be enjoined from evicting them as tenants holding over. Also, testimony of Charles H. Kelly, to the effect that he was the administrator of Craddock, and soon after his appointment he saw Eliza Williams, one of the defendants, who stated that the defendants had a homestead in the property; that at the expiration of the homestead he, Kelly, again saw her and demanded possession, which was refused; that the property was reasonably worth eight to ten dollars a month rental; that he was a member of the firm of C: H. Kelly & Brother; and that Craddock had executed the notes and mortgages above set out. Also, testimony of J. L. Key, to the effect that he remembered seeing the claim for homestead, which had been filed with the ordinary of Fulton county to prevent a sale of the property by the administrator, C. H. Kelly; that he remembered the names of Eliza Craddock and Prince Albert Craddock being in the claim; that the papers had been lost, and he did not know what disposition had ever been made of the claim. After this evidence, the plaintiff amended his petition by alleging that he did not proceed with the administration and sale of the property of the estate of Craddock, because of the homestead claim of the defendant, which did not expire until July, 1903, and that as far as he knew the defendants did not hold adversely to him until after the homestead expired. The amendment was allowed over the objection of defendants that it added a new cause of action. The ruling allowing the amendment was excepted to. Defendants then moved for a continuance on the ground of surprise, because of the new matter added by the amendment which the defendants were not prepared to meet. The motion was overruled, and the defendants excepted. The defendants then moved for a nonsuit, on the ground that the plaintiff had not made out a case under his petition and evidence, nor had he shown any necessity for the possession by him of the property, nor that there was no personal property of the estate out of which debts could be paid. This motion was overruled,

which ruling is made the basis of another ground of exception by the plaintiffs in error. The defendants then introduced the following documentary evidence: (a) The report of the appraisers and the order of the ordinary of Fulton county at the August term, 1903, allowing the same, setting aside as. a twelve-months support to Prince Albert Craddock a one-fourth interest in the house and lot above mentioned. (b) A certified copy of a homestead taken out by Douglas Craddock as the head of a family, September 21, 1886, the youngest of the beneficiaries being Prince Albert Craddock, alleged to be four years of age; the property consisting of a house and lot and household furniture of the total value of $600. (c) Testimony of C. H. Kelly, to the effect that he knew of no debt against the estate of Craddock, except the notes and mortgage of Kelly & Brother, introduced in evidence. At the conclusion of this evidence, the court, upon oral motion of the plaintiff, directed a verdict in his favor for an undivided three-fourths interest in the property described in the petition, and that the plaintiff recover of the defendants $165 mesne profits, and costs of suit. Error is assigned upon this ruling, upon the ground that it was not authorized by the pleadings and evidence.

*Lowndes Calhoun*, for plaintiffs in error. *James L. Key*, contra.

ATKINSON, J. 1, 2, 4. The rulings announced in the first, second, and fourth headnotes need not be elaborated.

3. A motion was made at the trial to dismiss the plaintiff's suit, upon the ground that it appeared on the face of the petition that the plaintiff was guilty of laches in instituting suit. The suit as amended was complaint for land, depending upon the assertion of a legal right, without reference to any right existing by force of a mere equity. The petition as amended alleged in substance, among other things: that in 1886 the land in dispute was set apart as a homestead for the use of the family of the intestate; that the homestead did not expire until July, 1903; that in the meantime the plaintiff's intestate had died; that letters of administration had been granted to the plaintiff; that in 1893 an order was obtained from the court of ordinary, authorizing sale of the land in dispute, for the purpose of paying debts of the deceased and making distribution among the heirs. The plaintiff's suit for the recovery of the land was filed in February, 1904. A period of more than ten years thus elapsed between the

grant of the order to sell and the institution of the suit. It was further in substance alleged that in the meantime the defendants, Prince Albert Craddock, a minor, and Eliza Williams (who were the only defendants remaining in the suit after certain others had been dismissed by amendment) had been in possession, not claiming adversely to the plaintiff, but as beneficiaries under the homestead. Under these conditions it was not erroneous to overrule the motion to dismiss. The order to sell did not recognize the existence of different estates in the particular property, such as an estate in the nature of a trust for the benefit of the members of the family in whose behalf the homestead had been created, or a reversionary interest in the head of the family after the termination of the homestead. It was a mere authority to sell the land as a whole. If the land had been sold under such an order granted by the ordinary, the purchaser could not have disturbed the possession of the family until after the termination of the homestead estate. Dealing with a homestead obtained under the constitution of 1877, Mr. Justice Simmons, speaking for the court, in *Planters Loan & Savings Bank* v. *Dickinson,* 83 *Ga.* 711, said: "The title still remained in the husband, but a new use of the property was created by the judgment of the ordinary setting apart the same as a homestead. That use was for the benefit of the wife and minor children, as long as the wife should live or so long as the children should remain minors. When the wife dies and the children become of age, the use ceases; and if the husband is still living at that time, he becomes reinvested with all the rights which he had before the homestead was set apart. He can then sell or mortgage at his pleasure. But so long as the homestead estate remains, he can not sell without the consent of his wife, nor without an order from the judge of the superior court; nor, as we now think, can he mortgage it with the consent of his wife and with an order of the judge of the superior court." Under the constitution of 1877, art. 9, sec. 3, par. 1 (Civil Code, §5914), it is expressly provided that after the homestead is set apart, the husband can not "alienate or encumber the property so exempted, but it may be sold by the debtor and his wife, if any, jointly, with the sanction of the judge of the superior court of the county where the debtor resides or the land is situated, the proceeds to be reinvested upon the same uses." The interest of

the members of the family in property after it has been set aside as a homestead is in the nature of a trust, whereby they are given the right of use and possession of the property at all times during the existence of the homestead. They can not be deprived of that use except in a manner authorized by law. The court of ordinary has not jurisdiction to pass any order terminating that use, impairing the homestead, or which would authorize the eviction of the members of the family while the homestead is in existence. The court of ordinary is a court of general jurisdiction with respect to particular subject-matters only. Civil Code, §4232. The power to pass upon a question involving the right of the members of the family, for whose benefit the homestead was obtained, to continue in possession of the exempted property, is not among the powers conferred upon the court of ordinary. Being without jurisdiction to interfere with the possession of the members of the family, the order of sale would not raise a presumption of a present right of entry upon the part of the administrator as against the beneficiaries of the homestead. *Stuckey* v. *Watkins,* 112 *Ga.* 268, contains dicta seemingly in conflict with the ruling here announced with respect to presumptions. The decision in that case was not rendered by the entire bench of six Justices. The court seems to have overlooked the fact that the general jurisdiction of the court of ordinary extended only to particular subject-matters, and, evidently by inadvertence, dealt with the subject as if the jurisdiction extended to all matters. To that extent the ruling is not sound, and we will not follow the precedent. As the order of the ordinary authorizing the sale was ineffective as authority for interfering with the possession of the members of the family while the homestead was of force, the plaintiff did not thereby acquire a present right of entry. After the termination of the homestead, under the principle announced in *Planters Bank* v. *Dickinson,* supra, there would have been a complete reversion of the right of possession to the head of the family, had he lived; but he having died, such reversion was to his estate. By mere force of the exhaustion of the right to possession by members of the family, under the order setting apart the homestead, the property became entirely unencumbered, and no difficulty thereafter remained to prevent the administrator from proceeding with the order to sell the property as the estate of his

intestate. Within less than one year after the termination of the homestead estate the suit was filed. The administrator thus proceeded with dispatch rather than with delay in instituting a suit after his right of entry accrued. Under these conditions, it did not appear from the face of the petition that there was any delay attributable to the plaintiff, tending to support a defense under the doctrine of laches.

5. It was the right and duty of the administrator to administer the entire estate of his intestate in such way as to apply so much thereof to the payment of debts as might be necessary to accomplish their satisfaction, and to make proper distribution of any residue of the property among the heirs at law. It appears from the pleadings and evidence that the two defendants against whom the verdict was directed had been in possession from the termination of the homestead estate, and that they were only two of a number of other heirs at law of the deceased. It also appeared that there were valid and subsisting debts against the estate, which were proper charges upon the land. It also appeared that an order had been granted by the ordinary, authorizing the administrator to sell the property for the purpose of paying debts, and making distribution among the heirs. It did not appear that any changes had taken place since the grant of the order, tending to render the sale unnecessary for the purposes for which it was granted. Under these conditions, the administrator was entitled to recover possession of the land from the two defendants remaining in the suit. It also appeared that the plaintiff made demand for possession, and the defendants refused to surrender the same. There was no direct evidence of a demand and a refusal; but the suit filed by the defendants against the plaintiff, seeking to enjoin him from evicting them as tenants holding over, amounted to an admission of such demand and refusal. The plaintiff having a right to possession for the reason already indicated, a refusal by the defendants to surrender possession upon demand rendered their future possession unlawful, and made them liable to the plaintiff for mesne profits. Their title as heirs at law was always subject to the right of the administrator to have possession where necessary to pay debts and to make proper distribution among all the heirs. See Civil Code, §3081. The remaining heirs (who were not parties to the suit) and creditors were entitled to partic-

ipate in a distribution of the mesne profits arising from the unlawful use of the land by the defendants, just as they would be entitled to participate in a distribution of any other asset of the estate. After the possession of the defendants became wrongful, they did not stand in any better position than any stranger to the estate. If there be any defense growing out of his position as heir, it is matter for him to set up.

6. The court directed a verdict for the plaintiff for an undivided three-fourths interest in the land, and $165 mesne profits, and costs. The evidence was without conflict upon any material issue. It appeared that by order of the court of ordinary an undivided one-fourth interest in the property was set apart to Prince Albert Craddock, a minor, as a year's support. The court gave due recognition to this interest, and in directing the verdict only dealt with the remaining three-fourths interest. It appeared from the evidence that on September 18, 1903, the defendants, Prince Albert Craddock and Eliza Williams, filed a suit for injunction against the plaintiff in the present case, complaining that on September 15, 1903, proceedings had been commenced by the plaintiff as administrator to evict them as tenants holding over. The allegations of that suit were such as to show a demand for possession at the time of the filing of the proceedings to evict, to wit, September 15, 1903. It was admitted in the defendants' plea that the property in dispute was reasonably worth the sum of $8 per month for rent. For the time intervening between September 18. 1903, and the date of the verdict, May 25, 1906, the rent at $8 per month would amount to $256, three-fourths of which would be $192. This latter amount would, under the admission of the defendant, be the reasonable value of the three-fourths undivided interest. The amount of mesne profits directed to be found by the court was a less sum; but the defendants can not complain because it is less. The uncontradicted evidence offered, when taken in connection with the admissions made by the defendants, were of such character as to leave nothing for submission to the jury; and it was not erroneous to direct a verdict as indicated.

*Judgment affirmed. All the Justices concur, except Holden, J., who did not preside.*