HOBBS *et al.,* administrators, *v.* HOUSTON *et al.*

572

No. 14312.　February 11, 1943.　Rehearing denied March 11, 1943.

574

*W. C. Smith* and *E. L. Smith,* for plaintiffs.   *Ford & Houston,*
*J. H. Tipton* and *Farkas & Burt,* for defendants.

JENKINS, Justice.  ■  If the defendant, who purchased the
land involved from the codefendant after that defendant obtained
the deed from the decedent, acquired title as a bona fide purchaser,
the plaintiff administrators would not be entitled to recover the
land or to cancel the two deeds.   However, on the question of no-
tice, a finding for the plaintiffs was demanded, since there was
undisputed evidence as to the transferee's knowledge of previous
litigation and disputes as to the title and right of possession, and
as to the possession of the land by one of the plaintiffs (*Irby* v.
*Smith,* 147 *Ga.* 329 (2),   93 S. E. 877) before and at the time
the transferee obtained his deed, and of other facts sufficient to
give notice of plaintiffs' claim; even though the testimony was in
conflict as to what, if anything, the plaintiffs told this defendant
before he took title as to their willingness for him to buy the prop-
erty, or as to their intention to sue for its recovery.   The status
of the defendant transferee therefore depended on the status of

his grantor, the codefendant, with regard to the instrument executed by the decedent.

■ On the question whether the deed from the decedent was an instrument of security for a debt, or an absolute deed of sale with an oral option to the grantor to repurchase, the Code provides that "A deed . . absolute on its face and accompanied with possession of the property shall not be proved . . by parol evidence to be a mortgage only, unless fraud in its procurement shall be the issue to be tried." § 67-104; Powell on Actions for Land, 519 (§ 388). But if the grantor remains in possession, he may show by parol evidence that the deed, though absolute in form, was actually intended only to secure an indebtedness. *Hand* v. *Matthews,* 153 *Ga.* 75, 78 (111 S. E. 408), and cit.; *Paulk* v. *Dorminey,* 154 *Ga.* 785 (115 S. E. 488). Upon repayment of the debt, such a grantor would be entitled to have the deed canceled as a cloud on his title. *Blankenship* v. *Cochran,* 151 *Ga.* 581 (107 S. E. 770), and cit. The presumption, of course, is that the instrument is what it purports on its face to be, an absolute conveyance; and the burden is on the grantor to show otherwise. 4 Pomeroy's Eq. Jur. (5th ed.), 586, § 1196, and cit.

In determining the character of the instrument, "It is a well-settled rule of law that parties may, if they please, really and truly sell property for a consideration actually passing, and at the same time secure the right to repurchase it at a future time for an agreed price, and if this be really the intent of the parties, the law will enforce it. It is also true that the difference between such a transaction and a mortgage is often a very nice one; and that the courts will scrutinize the matter very closely to discover whether there was, in fact, anything more intended than to provide a security for money due or advanced at the time, and all the facts will be looked to in search of the truth of the case. The great cardinal rule for testing the intent seems to be whether or not the relation of debtor and creditor was intended to exist between the parties—whether the property was taken in satisfaction and discharge of the sum due or advanced; or whether, notwithstanding the words of the conveyance, the relation of debtor and creditor was still to exist, to wit: the right of the one to demand, and the obligation of the other to pay." *Spence* v. *Steadman,* 49 *Ga.* 133 (2), 138, and cit.; *Jay* v. *Whelchel,* 78 *Ga.* 786, 787 (3 S. E. 906); *Galt* v. *Jackson,*

9 *Ga.* 151, 156; *Felton* v. *Grier,* 109 *Ga.* 320 (35 S. E. 175); *Manget Realty Co.* v. *Carolina Realty Co.,* 169 *Ga.* 495 (2), 506 (150 S. E. 828); 4 Pomeroy's Eq. Jur., 573-588 (§§ 1194-1196).

Under the preceding rules—on the question as to the character of the instrument, a finding for the defendant grantee, that the deed was absolute with an option to repurchase, was authorized. The form of the instrument was that of an absolute warranty deed. Besides stating a cash consideration, it contained an express *assumption* by the grantee of a described outstanding security deed, as is common in absolute conveyances, instead of merely reciting that the instrument was given *subject* to the prior security deed, as is common in security deeds or mortgages. Although there was parol testimony for the administrators, which might have been taken to indicate an intention by the parties to make the instrument one of security, rather than a purchase with an oral option to the grantor to repurchase on payment of all expenditures by the grantee, and there was testimony as to the grantor's continued possession of the land in his own right until his death, and also testimony that the value of the land considerably exceeded the consideration stated in the deed, there was controverting testimony for the defendants that the transaction was an absolute sale in consideration of what the grantee had expended and had agreed to expend for the grantor, and that the grantor's possession was merely as tenant or agent for the grantee. See, in this connection, *Wiggins* v. *Sheppard,* 145 *Ga.* 835 (b) (90 S. E. 56); *DeLaigle* v. *Denham,* 65 *Ga.* 482, 490, 491. Besides this conflict in testimony, although the decedent's son, one of the administrators, testified that all of the alleged debt to the grantee was fully paid by the decedent before 1927, that the decedent did not die until 1931, and that the grantee did not take possession until 1932, it does not appear that the grantor took any action before his death to cancel the deed, or that the administrators brought any proceeding until 1937 to recover the land or cancel the instrument. No question of laches is raised in the record, but this lapse of time after the alleged repayment was a circumstance which could be considered in determining both the question of intention of the parties with regard to the character of the instrument, and the question whether the decedent had fully paid or repaid to the grantee all of the amount required.

580

■ On the question whether the decedent paid or repaid to his grantee the full amount required—the grantee's plea, while denying that the instrument was given to secure an indebtedness, admitted an agreement to resell the property to the decedent for the amount of moneys paid to or for the decedent, provided this option should be "exercised within a reasonable time thereafter;" but denied that this option was ever exercised. Therefore the plaintiff administrators were entitled to show, if they could, a full payment of such amount, whether the instrument was an absolute deed or one of security. However, the evidence on the question of full payment was in conflict, and the finding for the defendants on that question was authorized under either theory of the case.

■ The plaintiff administrators of the grantor's estate having alleged that their decedent remained in possession of the premises after the execution of the instrument, as it was necessary for them to do in order to show that the deed was not absolute in fact as well as on its face, they did not seek to recover and manifestly could not have recovered mesne profits during the life of the decedent, when, as alleged, he remained in possession. They alleged, that the decedent grantor paid off the entire debt during his life; that after his death, the grantee wrongfully took and held possession for five years until he executed his deed to the defendant transferee; that the yearly rental value of the premises was a stated amount; that timber and turpentine were used, rendering the defendants liable in trespass; that the purpose of their suit is to take possession of the lands "for the purpose of selling same and to collect the rents, issues, and profits for the purpose of paying debts. and making distribution to the heirs" of the decedent. While they pray for a recovery of the "value of the rents, issues, and profits . . as well as the value of the turpentine and timber from the land," the petition as amended contains no prayer for an accounting or for general equitable relief. Nor is it anywhere alleged that the rents, issues, and profits received by the grantee from the decedent constituted either in themselves or added to other payments an amount sufficient to satisfy the decedent's debt, so as to entitle the administrators to a recovery of the land and a cancellation of the decedent's deed. While the administrators except to a charge excluding their recovery of rents and profits or damages for trespass during the period between the death of the decedent

and the appointment of the administrators, under the ruling of the judge as stated to the jury, that the administrators were not the proper persons to sue for such mesne profits and damages accruing during that period, neither the petition nor the exception to the charge is based on any contention or theory that the jury should have been allowed to consider such amounts as going in extinguishment of the grantor's debt, and in determining whether or not the debt had been paid. Carrying out the theory of the plaintiffs' claim as made by their petition, the judge charged, with respect to other mesne profits as might have accrued after the appointment of the administrators, that they, of course, would be awarded only "in case the plaintiffs recover in this suit." To this charge, conformably with the claim as made by the petition, no exception was taken. If it should be assumed that the petition might have been so framed or amended that any proved allowable mesne profits could have been applied by the jury in extinguishment of the decedent's indebtedness, rather than being limited to the claim as expressly set forth in the petition, no amendment was offered. While it is a well-recognized rule that a judgment will not be reversed, if supported by the evidence, where a proper amendment to the pleadings, if it had been made, would have caused the pleadings and the evidence to conform, we know of no rule which would justify the setting aside of a verdict and judgment because the pleadings might have been so amended as to make the contentions and the evidence conform, especially where, as here, the charge was in conformity with the unamended petition; and such charge is unexcepted to.

Accordingly since, under the administrators' pleadings and the charge as given, the verdict was in effect a finding that the administrators were not entitled to recover the land, and therefore were not entitled to any mesne profits or damages for trespass, which were sought to be recovered as such, it is unnecessary to consider the questions, sought to be raised in this court, as to what if any rents, profits, or damages the administrators might have recovered if the land had been recovered. As to these questions, see *Jones v. Wilson,* 195 *Ga.* 310 (24 S. E. 2d, 34), and cit.; *Hoyt v. Ware,* 156 *Ga.* 98 (6), 102 (118 S. E. 734); *Collins v. Henry,* 155 *Ga.* 886, 890 (118 S. E. 729); *Zeagler v. Zeagler,* 190 *Ga.* 220 (4), 223 (9 S. E. 2d, 263); *James v. Riley,* 181 *Ga.* 454 (2) (182 S.

E. 604); *Allen* v. *Macon, Dublin & Savannah R. Co.,* 107 *Ga.* 838 .(1-3), 844 (33 S. E. 696); *Craddock* v. *Kelly,* 129 *Ga.* 818 (5), 826 (60 S. E. 193); *Autrey* v. *Autrey,* 94 *Ga.* 579 (2) (20 S. E. 431); *Lee* v. *Moore,* 37 *Ga. App.* 279 (139 S. E. 922); *Roberts* v. *Kite,* 33 *Ga. App.* 91 (125 S. E. 719); *Hefner* v. *Fulton Bag & Cotton Mills,* 39 *Ga. App.* 728, 729 (148 S. E. 355); *Smith* v. *Fischer,* 52 *Ga. App.* 598 (1-3), 599 (184 S. E. 406); 28 C. J. .S. 1040 (§ 150, c), and cit.; Code, §§ 113-901, 113-907, 33-104, 33-105; Powell on Actions for Land, 542-544, §§ 409-412.

■  The petition as amended constituted a suit for recovery of land, cancellation of deeds, recovery of damages and mesne profits, and recovery of excess payments over the full amount of the alleged debt of the plaintiffs' decedent. The suit was not in form or substance one for an accounting for payments made on the indebtedness, represented by what the plaintiffs claim to have been a security deed, or an accounting for payments made on the purchase-price of the option, as the defendants set up· in their pleadings had been given to the plaintiffs' intestate upon the execution of what the defendants claim to have been an absolute deed. Nor does the petition allege or pray that any mesne profits received by the defendants after the death of the decedent grantor, during the only time they are alleged to have been in possession of the land, should be applied in extinguishment of the decedent's original debt, if not already extinguished by the decedent as alleged. Nor does the petition pray for general relief. Therefore the rulings here made go no further than to hold that the jury were authorized to find, under either theory of the case, that the administrators were not entitled to a recovery of the land or a cancellation of the deeds. As to what amounts, other than a failure to fully extinguish the amount required, as set forth by the petition, had or had not been paid under any theory, the court did not submit to the jury; no verdict·was rendered thereon; and the plaintiffs do not except to any failure to submit such questions or to charge thereon. Accordingly, as to these questions no adjudication is made.

■  There are twenty special grounds, relating to instructions and the absence of certain instructions to the jury, certain procedure in the trial, and admission and exclusion of evidence. The 12th exception, made to a charge that excluded recovery of rents and profits or damages for trespass during the period between the

death of the decedent and the appointment of the administrators, is controlled by the 4th preceding ruling under the general grounds.

7. Exception is taken to a failure to charge, without request, on the question of estoppel against the defendant who purchased from the decedent's grantee. The administrators pleaded in their amended petition that this transferee, Houston, bought the property for $1500, but was not a bona fide purchaser, because he had knowledge of the plaintiffs' claim: by information given him by the plaintiffs; by his knowledge of the previous litigation between his grantor, Holley, and Hudson Hobbs, a son of the decedent, who is one of the administrators; and by the transferee's signing of the administrators' bonds and having knowledge that the purpose of the administration was to sue for the land and cancel the deed from the decedent. The plaintiffs further pleaded that the defendant transferee "is *estopped* by all the circumstances from claiming title to said lands;" and that "under all the facts and circumstances herein set forth . . he is not an innocent purchaser of said premises and is *estopped* from setting up adverse title to said premises." There is no merit in this ground, especially in the absence of a request, for the reason that the court did in fact fully charge plaintiffs' contentions as to notice had by this defendant and the rules of law relating to bona fide purchasers and notice; and the question of estoppel, as pleaded, was dependent on these contentions and the law as thus charged. Under the law as given in charge, if this defendant had the notice pleaded, he could prevail only if the original grantee could have prevailed; and this is all that the plea of estoppel amounted to. This ruling is not altered by the fact that the judge did charge as to the *defendant's* plea of estoppel against the plaintiffs, by having told the defendant transferee that they would be glad for him to buy the property, to which instruction there was no exception.

8. There was no abuse of discretion, and no error of which the plaintiffs can complain, in the court's allowing one of defendants' counsel, after the close of arguments, "to submit himself to [plaintiffs' counsel and the] court for cross-examination," for the reason then assigned by such defendants' counsel that plaintiffs' attorney "has charged me in his argument with unlawful and disgraceful actions." This is true, since the record does not show what argument impelled this action, and a broad discretion in such matters

584

is vested in the judge; and since the record shows that plaintiffs' attorney did in fact avail himself of this offer to cross-examine the defendants' attorney.

9. The court did not err in excluding testimony by one of the administrators as to the "purpose" and the "sole purpose" of the administration being "to take possession of the land," over the objection that "the record is the highest and best evidence;" since the law fixes the right and duty of administrators, and since the evidence showed the present and previous suits of the administrators evidencing their purpose to recover and obtain possession of the land.

10. Exceptions were taken to the admission of testimony by the defendant Holley, the original grantee, that before the decedent executed the deed to him, the decedent and his wife told him that they were in "very distressful conditions;" that the decedent made the deed for the consideration that certain stated debts and obligations of the decedent would be paid or assumed by Holley; and that Holley agreed to furnish the decedent supplies for operating the land, took care of the decedent, and supplied his wants. The basis of these exceptions is that this evidence related to conversations and transactions with a deceased person. There is no merit in these grounds, since both sides, without objection, freely introduced evidence relating to the entire transaction and conversations between the decedent and his grantee; and there was not only documentary evidence but testimony by Holley, admitted without objection, similar to that excepted to in these grounds.

11. No prejudice to the plaintiffs appears in the admission of testimony from the defendant Holley as to what the decedent had told his wife, and as repeated by her to Holley, with regard to later adding fifty acres of land to the land covered by the deed from the decedent to Holley, over the objection that the testimony was hearsay. This is true since the witness gave similar testimony, without objection, as to acquiring from the wife an interest in this fifty acres; and since that acreage was not involved in this suit, and it is not made to appear how the testimony could have prejudiced the plaintiffs.

12. Nor does any injury to the plaintiffs appear from the admission of testimony by the defendant Holley that certain timber on the place was cut in order to purchase a mule for the decedent's wife and those left by him on the place after his death.

13. Seven special grounds attack the admission of certain tax receipts issued to the defendant Holley, and a canceled check, showing payments of taxes in 1926, 1935, and 1936, and of other canceled checks signed by Holley, payable to various persons, and of a mortgage note from him to a fertilizer company, marked paid. The grounds of exception are that the writings did not indicate upon what land the taxes were paid, or the payments were made, or for what purpose the money was used; and that such payments might have been made on lands of Holley other than that involved in this case. There is no merit in these grounds, since a memorandum statement made by Holley, showing in detail all of the moneys he claimed•to have paid out to or for the decedent, was introduced in evidence without objection, and he swore in general terms, without objection, that this statement was true and correct; swore that the items covered by the alleged consideration of the deed from the decedent had never been paid; and swore as to the correctness of particular items in the statement. Although the writings objected to did not on their face indicate their specific purpose, their connection with the matters in dispute was sufficiently shown by the testimony stated.

14. Irrespective of the materiality of certain warranty deeds and of a security deed from heirs of the decedent grantor, including the decedent's son who is one of the administrators, to one of the plaintiff administrators' attorneys—which were admitted on the contention of the defendants that the deeds tended to show by the amounts of their consideration a smaller value of the land than that contended by the plaintiffs,—no reversible error appears in the admission of these instruments, since they purported to represent only usual and legitimate transactions between the parties thereto; and even if they were not pertinent to the issues of the case, it does not appear how they could have been prejudicial to the plaintiffs.

15. The plaintiff administrators except to the admission of a writing delivered to the defendant transferee, Houston, signed by Hudson Hobbs, who was the decedent's son and one of the administrators, and witnessed by the other plaintiff administrator. This writing, made on the same day but after the deed from the defendant Holley to Houston, stated that Hobbs would thereafter occupy the land as tenant of Houston. The only objections to

this writing were: (1) that it was signed "under pressure and fear," and (2) that the signer could not waive or release any of his rights as administrator. There is no merit in the first objection, since the testimony of the signer wholly failed to show any duress; and even if such testimony had shown duress, it would have been no ground for excluding the paper, since the testimony was contradicted by Houston, and the conflicting testimony would have raised a question for determination by the jury. Nor is there any merit in the second objection, since the writing did not purport to waive or release any right as administrator. Under the evidence, the signer, as the decedent's son, one of his heirs, had been living on the land prior to the transfer and receiving supplies furnished by the transferee, Houston. As an heir, he could have agreed to occupy the land as tenant of the transferee, irrespective of any right as administrator. There was no objection to the writing on the ground of irrelevancy. Its admission in evidence related only to the question whether Houston was a bona fide purchaser. Since, under the first ruling, the evidence demanded a finding that he was not such a purchaser, but that his rights were controlled by those of the codefendant, the admission of this evidence would in no event afford ground for reversal.

16. There is no merit in the special ground, that quoted testimony by the defendant Holley was erroneously incorporated in the record by a ruling of the court, under the reporter's note that such testimony had been "delivered . . by agreement of all parties," although in fact such testimony had been delivered out of the presence of the jury after they had "retired from the box for the night." The admission of this testimony into the record, though not before the jury, could not possibly have affected the verdict. There is no exception in this or any other ground that a different finding on any controlling issue would have been required without such evidence; and the fact that it was delivered "by agreement of all parties" was not controverted.

*Judgment affirmed. All the Justices concur.*