2 W 343
218 232

# Schuylkill and Susquehanna Navigation *against* Decker et al.

Damages, being in compensation of an injury in the nature of a trespass, will not pass by a conveyance of land.

· That part of the act incorporating the Schuylkill and Susquehanna Navigation Company, which authorises an application by the company to the justices of the supreme court for writs of *ad quod damnum*, is a provision designed for the benefit of the company, as a measure of precaution, to ascertain beforehand the damages to be incurred by an adverse appropriation of land; and a judgment on the return of the inquisition was not for the proprietor of the land, but for the company, of which it might avail itself or not.

A motion for judgment upon an inquisition found, after forty years, will not be sustained.

THE President, Managers and Company of the Schuylkill and Susquehanna Navigation, on the 2d of April 1794, made application, in pursuance of the provisions of their charter of incorporation, for a writ of *ad quod damnum*, directed to the sheriff of Dauphin county, to be served on Jacob Decker, the owner of lands through which the

Company contemplated to locate their canal.    The writ was imme-
diately granted, executed, and an inquisition returned.    There was
no further proceeding until June 7th 1827, when a motion was made
by Thomas Elder, Esq., on behalf of Valentine Urich, for a rule to
show cause why Valentine Urich, the grantee of Jacob Decker, and
owner of the premises, shall not be made party defendant in the
suit ; and why the Union Canal Company shall not be made party
plaintiff, according to the provisions of the act of assembly ; and why
judgment shall not be entered according to law.

*Elder*, in favour of the application.

The opinion of the Court was delivered by

Gibson, C: J.—To the parties proposed to be made defendants,
it is a decisive objection that they have not a title to the damages,
which, being in compensation of an injury in the nature of a tres-
pass, could not pass by a conveyance of the land.    In like manner
the conveyance of a party wall does not entitle the grantee to contri-
bution from the adjoining owner, it being held in Hart *v.* Kucher, 5
*Serg. & Rawle* 1, that the claim is satisfied by payment to the first
builder, though the purchaser had not notice of it ; and on the same
principle, it was held in the Commonwealth *v.* Sheppard, 3 *Penns.
Rep.* 509, that the claim to compensation under the act for adjusting
titles to land in Bedford and Ulster townships, in Luzerne and Ly-
coming counties, is personal, and does not pass by a conveyance of
the land.    Granting the compensation here to be what it certainly
is, the price of a perpetual easement, it is impossible to imagine a
title to it in a subsequent grantee of the land subject to the ease-
ment.

But taking the proposed defendants to be the persons entitled, and
taking the Union Canal Company to have succeeded to the respon-
sibilities as well as the rights of the Schuylkill and Susquehanna
Navigation, what title has any one but the company to demand
judgment ?   It is said that both parties have an interest—the com-
pany in the land to be acquired, and the owner in the price to be
paid for it.    That construction would make the inquisition a con-
tract which both parties would have an equal right to enforce ; and
this leads to an inquiry into its nature and extent.    By the act of
incorporation, the company was authorised to agree with the owners
of land necessary to be occupied for the purposes of the work ; but
in case of disagreement it was authorised to do what ?   Simply to
apply to the justices of the supreme court for writs of *ad quod dam-
num*, as a measure of precaution, to ascertain beforehand the dama-
ges to be incurred by an adverse appropriation ; and the court was
required, on being satisfied that the writ was duly executed, to enter
judgment at the return of the inquisition, "that the said company,
paying to the several owners, as aforesaid, the several sums of money
in the said inquisition assessed, or bringing the same into court, shall

be entitled to have and to hold to them and their successors, all and every the lands, tenements, rights, liberties and privileges in the said inquisition described, as fully as if the same had been granted to them by the respective owners thereof." The judgment, therefore, it will be perceived, was not to be for the proprietor, but for the company. But, having ascertained the price at which the property might be taken, what if the company resolved to proceed no further? The inquisition would impose on it no greater obligation to accept at the valuation, than an inquisition in the orphan's court would impose on the petitioning child. It is not a contract nor the germ of a contract, but a measure to protect the company from being treated as a trespasser, in case it should enter on the land without the license of the owner, after an ineffectual attempt to agree; *et quisquis renunciare potest beneficio juris pro sese introducto.* The judgment is not that the owner recover the damages, but that the company have the land on paying for it; consequently it may abandon the proceeding whenever it chooses to take nothing by it, and it has abandoned it here by refusing to take judgment on the inquisition. But would a motion for judgment, even by the company, be sustained after a lapse of forty years? The act requires it to be rendered at the return of the inquisition; but taking that to be but directory, still there must be a reasonable limitation to the period of election, as the property would be materially lessened in value by a continued uncertainty as to the extent in which it might be cut up by the progress of the work. In every respect, then, these proceedings must be considered as abandoned and at an end.

Rule discharged.