## ALLEN *v.* MACON, DUBLIN & SAVANNAH R. R. CO.

1. A vendee of land upon which a trespass had been committed while it was
   the property of his vendor has no right of action against the trespasser for
   damages thus occasioned, which were recoverable by the vendor; aliter,
   as to new and additional damages growing out of a continuation of the
   original trespass after the vendee acquired title.
2. Where land devised as a whole to several persons was lawfully divided
   in kind, a devisee who received as his share a portion which had already
   been injured by the commission of a trespass thereon should, for the pur-
   pose of determining whether or not he can in his individual right and as
   sole owner of this portion maintain an action for the damages resulting
   thereto from such trespass, be treated as occupying the position of one
   who acquired by purchase realty thus injured while belonging to his
   vendor.
3. A right to bring an action of trespass for damage to realty does not
   "run with the land;" nor is such a right assignable by a landowner to
   his successor in title.
4. When, by reason of a trespass thereon, realty has been so injured as to
   render it permanently useless and valueless to the owner, the damages
   thus occasioned are recoverable by him in a single action.
5. A purchaser of land which had been thus injured in consequence of the
   wrongful occupancy and use thereof by a railroad company does not show
   a new or fresh cause of action against it by alleging that, because of the
   exposure of his live stock to danger from the running of its trains, he has
   been compelled to incur expense in erecting fences for their confinement
   and protection.
6. Nor can such a purchaser "sustain an action against the company for the
   value of the land, nor for the use and occupation of the right of way, as
   on an implied promise to pay him therefor."
7. The petition in the present case set forth no cause of action, and was
   rightly dismissed on demurrer.

Argued May 9,—Decided June 10, 1899.

Action for damages. Before Judge Candler. Laurens
superior court. July term, 1898.

*T. L. Griner* and *Anderson, Felder & Davis*, for plaintiff.
*John M. Stubbs* and *Alex. Akerman*, for defendant.

LUMPKIN, P. J.   The plaintiff, James Allen, brought an action for damages against the Macon, Dublin and Savannah Railroad Company, alleging that, by reason of the facts recited in his petition, it had injured and damaged him in the sum of $2,000.   The material allegations upon which he relied for a recovery were, in substance, as follows: "Petitioner is the owner in his own right of "certain lands, consisting of lot number 242, the south half of lot number 243, and the northern half of lot number 244, all lying and being in the county of Laurens. "Said lots of land now owned by petitioner were formerly a part of the estate of his father, Willis Allen, late of said county, deceased, who died leaving his wife, Sarah Allen, as the sole executrix of his last will and testament.   In accordance with the provisions of said will, all the lands belonging to said estate were duly and legally divided and partitioned between Sarah Allen and her five children, one of whom was your petitioner, share and share alike.   This division was made on the —— day of March, 1892," as shown by "a copy of articles of division" attached to this petition and marked exhibit "A."   "Petitioner shows that when he undertook to assume possession and control of said lands, he found that the Macon, Dublin & Savannah R. R. Co. had, without right, warrant, or authority from any person who was authorized or able to give the same, and without permission from himself, entered upon said lands, and had dug, excavated, and graded a right of way for a railroad through said lands, had laid down cross-ties and tracks, and was maintaining and operating a railroad thereon; . . that a right of way two hundred (200) feet wide had been cut through his lands by said Railway Co. for a distance of fourteen hundred (1,400) yards; . . that said Railroad Co. was and is a trespasser upon said land; and that it has cut, felled, and carried away all the timber which formerly grew upon the land so unlawfully entered upon by it and appropriated as a right of way," which timber consisted of "a fine growth of oak, hickory, and pine, . . to the injury and damage of your petitioner one thousand ($1,000) dollars.   In addition to this injury and damage, said R. R. Co. dug large and unsightly holes and excavations on said land

so wrongfully appropriated by it, removing the dirt from said land and using same in building embankments and making fills along its road-bed, thereby completely destroying the value of said land as farming land and rendering the same absolutely worthless for any of petitioner's purposes whatever. Said R. R. Co. has appropriated about fifty (50) acres of petitioner's land, when measured in square yards. Said land, before the entry of said R. R. Co. thereon and before the tortious acts herein complained of were committed, was well worth ($10.00) ten [dollars] per acre for farming purposes, but by reason of its acts it has been rendered entirely useless for any purpose, to the damage of your petitioner five hundred ($500) dollars. Before said R. R. was run through petitioner's lands, his cattle and stock were not subjected to damage on account of trains or rolling-stock of any railroad, but it became necessary for petitioner to build fences with which to confine and protect his cattle and stock from destruction by the trains of said company, which involved to petitioner an expense of one hundred and sixty ($160) dollars. Said R. R. Co. has had the use and occupancy of said land since 1885, and has thereby deprived petitioner of any rents, issues, and profits from said lands; a reasonable rental for the use and occupancy of the said lands is thirty ($30) dollars per year, and petitioner claims the sum of two hundred and forty ($240) dollars as rental for time that said railroad has so unlawfully occupied said lands. Petitioner shows that said R. R. Co. has never had said right of way through his lands condemned in accordance with the laws of this State, and has never made any reparation to him or any one else for the use and occupation of said lands."

Being called upon so to do by special demurrer, the plaintiff amended his petition by adding as exhibits thereto a copy of the instrument above referred to as exhibit "A," which he had failed to attach in the first instance, and also a copy of the will of his deceased father, under which title was asserted, which showed that the testator named as devisees his wife and " her surviving children," and directed her, as his executrix, after settling his debts and paying certain legacies, and "upon the youngest child becoming twenty-one years old or marrying,"

to make among herself and children a division of the residue of his estate, share and share alike. The document attached as exhibit "A" disclosed the fact that, upon petition of the executrix to the ordinary, praying for a division in kind of the real estate devised to herself and children, amounting to some thirty-seven hundred and fifty acres, the lands to which the plaintiff now asserts title as sole and unconditional owner, together with certain other realty, were duly set apart to him as his share of his father's estate. In the amendment filed by the plaintiff it was further alleged that "he came into possession of his remainder interest on the     day of March, 1892, said division having been made as soon as the limitation upon his estate in said lands had expired;" and that, "in dividing said lands, the damage by the railroad to the part assigned to petitioner was not considered, as it was agreed that the heir receiving the portion so damaged by the railroad should require said railroad to settle with him for the damages sustained, such amount to be received from the railroad to make up his deficiency of the value of the lands in price." To the petition as amended the defendant company demurred on various grounds, the most material of which will be stated and dealt with in the discussion which follows. Thereupon the trial judge dismissed the plaintiff's petition, and he excepted.

1. One of the objections raised by the demurrer to the plaintiff's petition was, that it appeared from the allegations therein made "that the trespass complained of and the injury and damages to the land by the construction of the road vested a right of action immediately upon the construction of the road, and that plaintiff, who stands in the position of a subsequent grantee of the land," could not, therefore, maintain his present suit for damages. It is unquestionably true that: "A railroad company is not liable to a party who purchases land after the road is constructed across it, for any damage done to the land in the construction of the road. If the owner of the land, at the time of the construction of the road, does not complain of the damage done to the land, his grantee certainly can not." Toledo Railway Co. v. Morgan, 72 Ill. 155. To the same effect, see also: Illinois Central R. R. Co. v. Allen, 39 Ill. 205; In-

diana Ry. Co. *v.* Allen, 100 Ind. 409; Pomeroy *v.* Railroad Co., 25 Wis. 641; Milwaukee R. R. Co. *v.* Strange, 63 Wis. 178; Zimmerman *v.* Union Canal Co., 1 Watts & S. 346; Schuylkill Co. *v.* Decker, 2 Watts, 343; Turnpike Road *v.* Brosi, 22 Pa. St. 32; Tenbrooke *v.* Jahke, 77 Pa. St. 392; Allyn *v.* Railroad Co., 4 R. I. 461; Sargent *v.* Machias, 65 Me. 591; Verdier *v.* Railroad Co., 15 S. C. 476; Sams *v.* Railway Co., Ibid. 484; Galveston R. R. Co. *v.* Pfeuffer, 56 Tex. 67; Hentz *v.* Railroad Co., 13 Barb. 646; Haskell *v.* New Bedford, 108 Mass. 208. The reason for this rule is obvious. As is pointed out by the authorities above cited, a trespass upon land simply gives to the owner a right of action for damages, which can not be said to "run with the land," and therefore does not pass to a subsequent purchaser. In this connection, see specially McFadden *v.* Johnson, 72 Pa. St. 335, wherein it appeared that the plaintiff was owner of land through which a railroad was constructed, and, before receiving compensation for the resulting damage to her property, sold the land to another, with whom the company afterwards had a settlement, paying him a specified sum as damages. Upon her bringing against him an action of assumpsit, the court held, " she could recover the amount from him," for the reason that "damages were a personal claim of the owner when the injury occurred; they did not run with the land, nor pass by the deed, although not reserved." And see Mills on Eminent Domain (2d ed.), §§ 66, 67. In this State, the matter under discussion is no longer an open question, it having been expressly ruled by this court in *McLendon* v. *Atlanta & W. P. R. R. Co.*, 54 *Ga.* 293, that: "When a railroad company appropriates land for its road-bed and track, without the consent of the owner of the land, and without condemning the land under the charter, a right of action accrues to such owner. But a subsequent purchaser can not sustain an action against the company for the value of the land, nor for the use and occupation of the right of way, as on an implied promise to pay him therefor." As a matter of course, if the original entry of the railroad company was wrongful and not under color of right, it can not better its situation by maintaining its road-bed upon and operating its

trains over the right of way so appropriated, but continues to occupy the attitude of a mere trespasser. *Atlantic & Gulf R. R. Co.* v. *Fuller*, 48 *Ga.* 423. And it necessarily follows that: "While the purchaser of land can not recover damages for an injury thereto by the construction of a railroad over the same, or a part thereof, before his purchase, yet if the railway company, after his purchase, adopts a new feature in the construction and operation of its road in the future," which entails a fresh injury to the land not comprehended by its original wrongful appropriation and trespass, such purchaser will undoubtedly "be entitled to just compensation for any damages growing out of the change or alteration in the nature of the work." Wabash Ry. Co. *v.* McDougall, 118 Ill. 229. To the same effect, see: Southside R. R. Co. *v.* Daniel, 20 Grat. 344; New Brighton *v.* Peirsol, 107 Pa. St. 280. In every such case, however, it must distinctly appear that the injury and damage, for which compensation is claimed by the vendee, are of a character such as would not entitle his vendor to a recovery therefor in an action based on the tortious acts of the railroad company committed before a sale of the land; for it is to be borne in mind that, "In an action brought for a deterioration in the value of real estate, occasioned by a nuisance of a permanent character, or which is treated as permanent by the parties, all damages for the past and future injury of the property may be recovered, and one recovery in such a case is a bar to all future actions for the same cause." See Chicago R. R. Co. *v.* Loeb, 118 Ill. 203, and the cases last above cited. Indeed, in Georgia it is imperative that, where the effect of a trespass is "to destroy wholly and permanently the fertility of the land," so as to render it worthless for the use to which it is mainly adapted, the owner must bring a single action to recover all damages arising in this connection, past, present, and future, he having no right to bring successive actions to recover damages sustained from time to time during the continuance of the nuisance created by such trespass, the same being permanent in its character and therefore rendering the ascertainment of all damages practicable in a single suit. *Danielly* v. *Cheeves*, 94 *Ga.* 264; *City Council of Augusta* v. *Lombard*, 101 *Ga.* 726, and cases cited.

**2.** The question upon which the decision of the present case must necessarily turn is whether or not the plaintiff, under the facts alleged in his petition, is properly to be regarded as occupying the position of one becoming a purchaser of the land subsequently to the company's entry thereon and after the commission by it of the tortious acts of which complaint is made. In whom was vested the legal title to the land at the date the company first wrongfully entered thereon and commenced operations with a view to constructing its road-bed is not unequivocally disclosed by the plaintiff's allegation; nor is it clear therefrom at what precise time the company completed the construction of its road, or when any one of the particular acts of trespass alleged was committed. If all the damages thereby sustained accrued prior to the death of the plaintiff's father, it would seem that the right to institute an action for the recovery of damages was in the executrix. If the alleged wrongs were done after the death of the testator, but prior to the year 1892, then, apparently, the right to sue was in his devisees, in whom the legal title to the land immediately vested as tenants in common, under the terms of his will, notwithstanding the power of the executrix to sell the land if necessary to pay debts, or to make among them a partition thereof, upon the happening of a future event. See, in this connection, Mills on Eminent Domain (2d ed.), § 67, and cases cited. Be this as it may, however, it is certainly true, under the facts disclosed, that the plaintiff, in the capacity in which he now sues, viz., sole and unconditional owner in fee, acquired no vested right or title to the particular tracts of land described in his petition until the same were duly set apart to him under a proceeding instituted by the executrix with a view to effecting a partition in kind of the testator's realty among his devisees. This being so, the plaintiff clearly has no individual right of action as to any act of trespass committed by the railroad company prior to the month and year last above mentioned. Possibly the plaintiff, while a tenant with others and as such vested with title to an undivided sixth-interest in the land in question, may have suffered damage; but, if so, this is a matter with which we are not now called upon to deal. He

bases his alleged right to maintain the present action upon the theory that the land appropriated by the company as a right of way belongs to him absolutely, not upon the idea that, as a tenant in common, he has a fractional interest therein. Whether or not, were he relying upon the latter theory, he could, without joining with him his cotenants, bring an action in trespass to recover his part of the damages alleged to have been sustained, is a matter which is by no means free from doubt, in view of the provisions of our code relating to the right of a tenant in common to maintain, under certain circumstances, a separate action. Without undertaking to pass upon this question, suffice it to say he is not attempting to pursue such a course, but is standing upon his present title as sole owner of the premises.

3. As appears from the amendment to the plaintiff's petition above referred to, the precise ground upon which he bases his alleged right to maintain his action is, that although the damages he seeks to recover may all have accrued prior to his present claim of ownership, he is nevertheless entitled thereto, for the reason that, in effecting a partition in kind of the real estate of his deceased father among himself and the other devisees, "the damage by the railroad to the part assigned to petitioner was not considered, as it was agreed that the heir receiving the portions so damaged by the railroad should require said railroad to settle with him for the damages sustained, such amount to be received from the railroad to make up his deficiency of the value of the lands in price." Giving full credence to this somewhat remarkable statement, we are at a loss to perceive how the same can possibly benefit the plaintiff. Certainly, it affords no reason for holding that the general rule concerning the rights acquired by a purchaser of land upon which a trespass had previously been committed does not apply to the case before us. Even were it the intention of the plaintiff to specifically allege that his former cotenants formally undertook in writing to assign to him their right to claim damages from the railroad company, his allegations in this connection are not to be considered as availing him anything. A claim for damages sustained by reason of a trespass necessarily

is one arising ex delicto, and therefore is not legally assignable in this State.   Civil Code, § 3079; *Gamble* v. *Central Railroad Co.,* 80 *Ga.* 595, 599; *Central Railroad Co.* v. *Brunswick & Western Railroad Co.,* 87 *Ga.* 386, 389.

4. The defendant company by its demurrer made the further point that, as the plaintiff expressly alleged that the injury to the land was of a permanent character and rendered the same wholly worthless for all ordinary purposes, he had no right to maintain an action for the recovery of any of the items of damage claimed by him, it affirmatively appearing from the facts set forth in his petition that he did not become the owner of the premises until after all the tortious acts complained of had . been committed.   The contention thus presented necessitates a somewhat close scrutiny of the plaintiff's allegations, in the light of the rule of law, above announced, that, as to any fresh injury committed by a trespasser on land previously damaged by him, a purchaser after the original trespass who was owner at the time such further damage accrued would have a right of action.   As will have been observed from the above recital of the contents of the plaintiff's petition, he alleges that when, by virtue of the title he now asserts, "he undertook to assume possession and control of said lands, he found that the" defendant company had wrongfully "entered upon said lands and had dug, excavated, and graded a right of way for a railroad through said lands, had laid down cross-ties and tracks, and was maintaining and operating a railroad thereon;" and, in this immediate connection, further complains that the company "cut, felled, and carried away all the timber which formerly grew upon the land so unlawfully entered upon by it and appropriated as a right of way."   He also alleges that "said R. R. Co. has had the use and occupancy of said land since 1885, and has therefore deprived petitioner of any rents, issues and profits from said lands."   These claims for damages can hardly be in accord with the truth, if, prior to 1892, the company had not fully completed its tortious act of "removing the dirt from said land and using same in building embankments and making fills along its road-bed, thereby completely destroying the value of said land as farming land, and rendering the same ab-.

solutely worthless for any of petitioner's purposes whatever."
We accordingly conclude that the plaintiff shows no right to
recover for any damages resulting from the original construc-
tion of the road, or from loss of income arising out of the fact
that the rental value of the land was thereby wholly destroyed.
See *Danielly* v. *Cheeves*, supra; *Clark* v. *Lanier*, 104 *Ga.* 184.
If, after the plaintiff became sole owner of the land, the com-
pany committed any fresh injury thereto, it was incumbent
upon the plaintiff to so allege unequivocally; for it clearly ap-
pearing that at least the major part of the damages sought to
be recovered were sustained before he acquired the title now set
up, it was imperative that he should, in response to the special
demands made upon him by the defendant's demurrer, elimi-
nate from his petition all items of damage accruing prior to
1892, and to amend his allegations (if he could consistently
with the truth) so as to leave no doubt that, as to other items
claimed, he was entitled to maintain his suit. This the plain-
tiff made no attempt to do. On the contrary, counsel who
represented him appear to have resisted the dismissal of his
petition, on the ground that he did not, as contended by the
company, occupy the position of a subsequent purchaser rela-
tively to damages arising by reason of tortious acts committed
prior to the setting aside to him of the lands in question.

5. The only allegation which really wears the aspect of a
claim for damages arising since the plaintiff acquired owner-
ship over the premises is that relating to the danger to which
his live stock is exposed by reason of the operation of the de-
fendant's trains, because of which he asserts it was necessary
for him "to build fences with which to confine and protect his"
stock, at a cost of $160. As we understand the law, while a
trespasser is liable to respond in damages for every injury di-
rectly traceable to his tortious acts, he can not be legally called
upon to reimburse the injured party for an outlay voluntarily
expended by the latter, with a view to minimizing the chances
of injury, under an apprehension on his part that the wrongful
conduct of the trespasser, if continued, will necessarily result
in damage unless certain precautions, more or less expensive,
are taken to guard against the threatened or impending danger.

For instance, no one would for a moment suppose that a farmer could recover of a neighbor the price of a shotgun purchased upon the idea that the expenditure was necessary to avert a possible raid by such neighbor's hogs upon the farmer's cornfield, notwithstanding the hogs in question had previously displayed an inclination to commit, or had actually indulged in, such a depredation. Section 3912 of our Civil Code declares that, "If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrong-doer."

6. On the argument here it was earnestly contended that although, under the facts alleged, the plaintiff might not be entitled to recover anything in the way of damages, the court below nevertheless erred in dismissing his petition, for the reason that he also alleged a right therein to recover the value of the land, as well as a fair rental for the company's use and occupation of the same since 1892. In this connection, counsel for the plaintiff say in a brief filed in his behalf: "We call attention to the fact that this suit is not merely an action for trespass, but seeks to recover the value of the land taken by the railroad." We do not think this a fair or proper characterization of the nature and purpose of this proceeding. But, waiving this point, the contention of counsel may be readily answered. Giving to the plaintiff's petition the construction for which they insist, it results that "this action is of a very anomalous character," being neither more nor less than an attempt to join in a single suit a cause of action arising ex contractu with one growing out of a tort pure and simple — a practice which, under the express provisions of our code, is not permissible. *McLendon* v. *Railroad Co.*, supra. That case is also authority for the proposition, that even had the plaintiff relied for a recovery solely upon his alleged right to require the railroad company to pay him the value of the land wrongfully appropriated, together with its fair rental value during the company's occupancy of the same as a right of way, his petition would be clearly without merit and open to demurrer. It

would be an anomaly to hold that a vendee of land who asserts that, prior to his acquisition of title, another had wrongfully entered thereon and was still tortiously holding possession thereof in the capacity of a mere trespasser, could recover of the latter the value of the premises upon the theory that he had by implication agreed to pay therefor its market price. We know of no law under which a trespasser upon land can be compelled to become an involuntary purchaser of the same at the election of the owner or his vendee. On the contrary, the penalty visited by law upon a trespasser is damages, not the entire market value of the premises upon which he wrongfully enters, with the doubtful privilege added of being thereafter considered the purchaser of something he never, even as matter of fiction, agreed to buy. The same reasoning applies to recovery by the plaintiff of annual rental. An "action for use and occupation can not be sustained if defendant claims title adversely to plaintiff." *Williams* v. *Hollis*, 19 *Ga*. 313. The relation of landlord and tenant must exist between the parties; for by virtue of that relation alone can one of them be said to have contracted with the other to pay rent. In no sense is a trespasser the tenant of the owner of land tortiously entered and held adversely to him; and, however guilty of wrongdoing such trespasser may be, it is doubtful whether any court could be persuaded to go so far as to punish him to the extent of making him become the tenant of one with regard to whom he had at least acted consistently in refusing to recognize him as a landlord.

7. It follows from the foregoing, that in no view of the plaintiff's petition was a valid cause of action set forth, and the trial judge properly dismissed the same on demurrer.

　　　　*Judgment affirmed. All the Justices concurring.*