## ST. LOUIS & S. F. R. CO. v. STEPHENSON.

No. 2967.   Opinion Filed November 10, 1914.

(144 Pac. 387.)

**PUBLIC LANDS—Railroads—Construction of Embankment—Right to Recover Damages—Loss of Rental Value—Letters Patent.** In an action for damages to land by reason of the construction of a railway embankment, where the pleadings and evidence show conclusively that the permanent character of the embankment and its continuance as originally constructed necessarily produced the injury to the freehold and caused the entire depreciation in the value thereof at the time of the construction, and that such injury had wholly occurred prior to the time when plaintiff acquired such land, held, that she took it in its then known condition, and the issuance of a patent conveying the land did not confer upon her a right of action for the recovery of damages for injuries thereto occurring prior to her acquisition of title. Held, further, that a loss of rental value does not constitute an injury for which damages may be recovered where, as in this case, there was permanent injury to the land itself.

(Syllabus by the Court.)

*Error from District Court, Okfuskee County;*
*John Caruthers, Judge.*

Action by Augusta Stephenson, by her next friend, A. P. Stephenson, against the St. Louis & San Francisco Railroad Company, a corporation. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

*W. F. Evans* and *R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*W. T. Banks,* for defendant in error.

BLEAKMORE, J.  This case presents error from the district court of Okfuskee county. On March 3, 1910, defendant in error, plaintiff below, commenced this action against plaintiff in error, as defendant. The parties will be referred to herein as they appeared in the trial court. The amended petition of plaintiff is in three counts, and is set forth in full:

"That some time in the year 1899, the exact date being unknown to plaintiff, defendant constructed and completed a line

of railroad through Okfuskee county, Oklahoma, and constructed an embankment without culverts for one-half mile through the north half of the southwest quarter of section 14, township 10 north, range 11 east, in Okfuskee county, Okla., and that thereafter plaintiff, being a member of the Creek Tribe of Indians, received a certificate of allotment to said land as a part of her share of the lands of the Creek Nation, and that on or about the 7th day of January, 1904, she received a patent to said land from said Creek Nation, and from the United States, since which time she has been the legal owner of the real estate so described; that the act of the defendant railroad company in constructing said embankment through said land and the failure to construct proper and sufficient culverts to enable surface water to run off as it had done before the construction of said embankment, causes the surface water from the hills to run down against said embankment and back up over about twenty acres of said tract of land and to stand there through most of the year, thereby ruining said land for agricultural purposes for all times to come, which said damage has been continuous for all the time which plaintiff has owned said land, and that by the continuous overflow of said land, caused by said embankment, plaintiff has been deprived of the use and benefit of said land, to her damage in the sum of $1,000.

"(2)    That plaintiff had planted cotton on said twenty acres of land in the years 1908 and 1909, and that said surface water, running down from the hills and being caught by said embankment overflowed said land, and destroyed said cotton crop for said years; that said land would have produced a bale of cotton per acre for each of said years but for said railroad embankment catching and holding the water on said land; but that the construction of said embankment without the necessary culverts to prevent the escape of said surface water caused the destruction of said cotton crop for the years 1908 and 1909, whereby plaintiff was damaged in the sum of $499.50 for each of said years, or an aggregate of $999.

"(3)    That by the wrongful acts of the defendant in constructing said embankment without the necessary culverts, and causing the continuous overflow of twenty acres of land, said land is rendered wholly useless for any purpose, and that, in causing the destruction of said cotton crop for the years 1908 and 1909, she has sustained damages in the full sum of $1,999, for which she prays judgment."

Defendant demurred generally to the first and second counts of the petition, and, as a special ground of demurrer to the first count, alleged that the cause of action therein set forth was barred by the statute of limitations. Upon demurrer being overruled and exceptions saved, defendant answered, averring that the railroad in question was constructed by the St. Louis, Oklahoma & Southern Railway Company under authority conferred upon it by an act of Congress of March 30, 1896, and was completed and put in operation in the year 1899, since which time said road has been maintained as a permanent structure, and that the plaintiff's cause of action, if any she has, accrued upon the completion of said road, and that this action was not brought within three years after the completion of the same or within three years after the injuries alleged to have occurred, and that her cause of action is barred by the statute of limitations, as provided in sections 4478 and 4490, Mansf. Dig. of Ark., put in force in the Indian Territory by act of Congress of May 2, 1890 (chapter 182, 26 St. at L. 81), and continued in force up until November 16, 1907. Plaintiff replied denying that the cause of action accrued upon the completion of the roadbed, and alleging that the same accrued by the backing of surface water upon the land and within three years before the filing of the suit, and "that the damage to her land is a continuous injury, as set forth in her petition, and not subject to any statutory limitations." The evidence disclosed that after the construction of said railroad through the lands described in the petition said lands were allotted to plaintiff, as a member of the Creek Tribe of Indians, and that thereafter, on the 7th of January, 1904, a patent was issued conveying to her said lands, excepting therefrom the right of way of said road; that there had been no change in the condition of the embankment extending through said lands since its construction. The father and next friend of the plaintiff testified in this regard as follows:

"Q. Did you tell the jury the way that embankment was built in the first instance? A. Well, there was a dump running east and west through the 80 acres of land; the dump was constructed running pretty near east and west. Q. Pretty much like

it is now? A. Just exactly. Q. No change has been made since that time? A. No, sir; no change has been made."

And again he says:

"Q. You say it overflows every year about the same? A. Every year except a dry year like this? Q. In time of ordinary rainfall does it overflow? A. When we have a good deal of rain it overflows. Q. And has continued to do so since the embankment was put there ten years ago? A. Yes, sir. Q. Then I understand you to say that, notwithstanding that, in 1907 that land was worth about $50.00 an acre? A. It would have been worth that if that embankment wasn't there; that is what I aimed for the jury to understand me, if that railroad hadn't put that dump through there it would have been worth $50.00 an acre. Q. As a matter of fact, with the dump there it wasn't worth it? A. No, sir. Q. Was it worth any more in 1907 than it was in 1908? A. No, sir; the dump through there has injured the price of the land. Q. And it had done that from the time it was put there? A. Yes, sir. Q. And the injury to the land has been continuous since that time? A. Yes, sir. Q. And it was in the same condition in 1904? Yes, sir."

Among the numerous assignments of error to be considered are: (1) Plaintiff cannot recover for injury to real estate caused by the obstruction of mere surface water not confined to a definite channel; (2) that the plaintiff is not entitled to maintain the action, she having acquired title to the land long after the embankment was constructed; and (3) error of the trial court in admitting evidence and instructing the jury as to the measure of damages. These assignments of error will be considered in the foregoing order.

In *C., R. I. & P. Ry. Co. v. Johnson,* 25 Okla. 760, 107 Pac. 662, 27 L. R. A. (N. S.) 879, it is said:

"The highest courts of the following states, recognizing the rule that the right to divert surface waters under the common law both in England and America had been qualified, hold that a proprietor, without a grant, cannot collect surface water into an artificial channel or volume and pour it upon the land of another to his injury, or by means of ditches or other artificial means cause the same to flow upon the lands of another where it would not otherwise go to his injury. *Crabtree v. Baker,* 75 Ala. 91, 51 Am. Rep. 424; *Springfield & Memphis R. Co. v. Henry,* 44 Ark. 360; *Livingston v. McDonald,* 21 Iowa, 160, 89 Am. Dec. 563;

*Sullens v. Chicago, etc., Ry. Co.,* 74 Iowa, 659, 38 N. W. 545, 7 Am. St. Rep. 501; *Robertson v. Daviess Gravel Road Co.,* 116 Ky. 913, 77 S. W. 189, 25 Ky. Law Rep. 1114; *Gregory v. Bush,* 64 Mich. 37, 31 N. W. 90, 8 Am. St. Rep. 797; *Hogenson v. St. Paul, M. & M. R. Co.,* 31 Minn. 224, 17 N. W. 374; *Sheehan v. Flynn,* 59 Minn. 436, 61 N. W. 462, 26 L. R. A. 632; *Kelly v. Dunning,* 39 N. J. Eq. 482; *Bowlsby v. Speer,* 31 N. J. Law, 351, 86 Am. Dec. 216; *McCormick v. Kansas City, St. Joseph & Council Bluffs R. Co.,* 70 Mo. 359, 35 Am. Rep. 431; *Id.,* 57 Mo. 433; *Porter v. Durham et al.,* 74 N. C. 767; *Fremont, E. & M. V. R. Co. v. Marley,* 25 Neb. 138, 40 N. W. 948, 13 Am. St. Rep. 482; *Chalkley v. Richmond,* 88 Va. 402, 14 S. E. 339, 29 Am. St. Rep. 730."

And again in the same opinion it is said:

"In the case of *C., R. I. & P. Ry. Co. v. Groves,* 20 Okla. 101, 93 Pac. 755, 22 L. R. A. (N. S.) 802, this court said: 'That the owner of the land cannot collect the water into an artificial channel or volume and pour it upon the land of another to his injury. * * *' Whilst that expression may have been *obiter* in that opinion, yet it is supported by the great weight of authority, and we approve the same as a correct rule to be followed by this court."

In the case of *C., R. I. & P. Ry. Co. v. Davis,* 26 Okla. 434, 109 Pac. 214, the rule announced in the Johnson case was reaffirmed. While the facts in the Johnson and Davis cases are somewhat dissimilar to those in the instant case, yet the principle there established that one proprietor cannot, without liability, collect surface water by artificial means and discharge or cause it to overflow upon the land of his neighbor applies here. The act of Congress of March 30, 1896 (chapter 82, 29 St. at L. 80), authorizing the construction and operation of defendant's railroad, provides:

"Sec. 3. That before said railway shall be constructed through any lands held by individual occupants according to the laws, customs, and usages of any of the Indian nations or tribes through which it may be constructed, or by allotments under any law of the United States or agreement with the Indians, full compensation shall be made to such occupants for all property to be taken or damage done by reason of the construction of such railway."

The statute provides for an appraisal and award of such damages and for appeal to the United States courts in the Indian Territory by either party dissatisfied with the findings and award. It is further provided in said act:

"Sec. 5.   That said railway company shall pay to the Secretary of the Interior, for the benefit of the particular nations or tribes or individuals through whose lands said line may be located, the sum of fifty dollars, in addition to compensation provided for in this act, for property taken and damages done to individual occupants by the construction of the railway for each mile of railway that it may construct in said territories.   *   *   * Provided, that if the general council of either of the nations or tribes through whose land said railway is located shall,   *   *   *. dissent from the allowance provided for in this section, and shall certify the same to the Secretary of the Interior, then all compensation to be paid to such dissenting nation or tribe under the provisions of this act shall be determined as provided in section three for the determination of the compensation to be paid to the individual occupant of lands, with the right of appeal to the courts upon the same terms, conditions, and requirements as therein provided."

No change was made in the roadbed after its construction, and there is no allegation or proof of the negligent maintenance or use thereof causing injury to the property of plaintiff.

2.   It is contended that, the roadbed and embankment complained of being permanent, all injury to the plaintiff's land occurred and was complete at the time of the construction of said roadbed, and that the plaintiff, having acquired her title to the land subsequent thereto, is not entitled to maintain this action. Among the authorities on this question are the following:

In *Union Springs v. Jones,* 58 Ala. 655, it is said:

"If Mrs. McRae, the former owner of the lots, and while she was the owner, gave to the town council, or its employees, authority to erect the conduit, or water escape, and the same was erected, and remained there when Jones purchased, and there was no change in the structure which caused an increased flow of water, and increased damage to plaintiff's property, this would be a complete defense to the present action."

In *McLendon v. A. & W. P. R. Co.,* 54 Ga. 293, the court said:

"When a railroad company appropriates land for its roadbed and track, * * * and without condemning the land under the charter, a right of action accrues to such owner. But a subsequent purchaser cannot maintain an action against the company for the value of the land, nor for the use and occupation of the right of way, as on an implied promise to pay him therefor."

And in the case of *Allen v. M. & D. R. Co.*, 107 Ga. 838, 33 S. E. 696, the court said:

"One of the objections raised by the demurrer to plaintiff's petition was that it appeared from the allegations therein made 'that the trespass complained of and the injury and damages to the land by the construction of the road vested a right of action immediately upon the construction of the road, and that plaintiff, who stands in the position of a subsequent grantee of the land,' could not, therefore, maintain his present suit for damages. It is unquestionably true that: 'A railroad company is not liable to a party who purchases land after the road is constructed across it for any damage done to the land in the construction of the road. If the owner of the land, at the time of the construction of the road, does not complain of the damage done to the land, his grantee certainly cannot.' "

To the same effect, see case of *C. & A. R. Co. v. Maher*, 91 Ill. 312, wherein the court said:

"We are not aware that any court has ever held that a mere trespass to land, giving a right of action, can be assigned by an instrument in writing for the purpose, or by conveying the land. Such a right of action is not appurtenant to the land, nor does it, like a covenant for title, inhere to or run with the land. It, when accrued, is a personal right, and is not transferable. It follows, then, that appellee did not acquire the right of action which accrued to her husband by the construction of this protection to the bridge. The action for that wrong was vested in him, and she can recover nothing on account of the placing of the obstruction in front of the dock. But the question is presented whether she may recover for damages she has sustained by the continuance of the obstruction since she purchased. The question then recurs whether this was the character of injury for which a recovery would lie, involving all future actions growing out of the erection of this structure. That it is permanent in its character seems to be apparent. It is more than probable that it will continue perpetually, by being renewed as necessity may require. If so, then it could be determined, with a reasonable degree of

certainty, how much it depreciated the value of the land as a permanent structure—how much less the land was worth after the erection of the structure than before. [Citing authorities.] * * * These authorities establish the doctrine that Maher might have sued for and recovered all the damages which were sustained by the property from the erection, whether at the time or in the future; that he could have sued and recovered for the depreciation in the value of the property caused by the erection of this protection. This being true, the right of action was in him for a recovery of all damages that were or might be caused by the structure, and as the right has not, nor can be, transferred to the appellee, she has shown no right of recovery."

And the same court in the latter case of *Galt v. C. & N. W. R. Co.*, 157 Ill. 125, 41 N. E. 643, reaffirmed the doctrine in the following language:

"But aside from the consideration that the right of action for trespass to land is not susceptible to assignment, so as to enable the assignee or grantee to enforce the same, the decisions of this court recognize and adhere to the doctrine also that in cases of this character, where the structure is permanent, and the injury therefore continuing, a recovery may be had, once for all, by the owner, for all damages thereby occasioned, and if he sells or conveys the land to another, the latter takes it with its surroundings and at the decreased price. The grantee, in respect to the damages caused by the railroad, having been compensated in the reduced price at which he bought the land, on account of the permanent location * * * of the railroad in relation to it, would be receiving pay for his damages a second time if his present claim be allowed. * * * In the case at bar, appellant became the owner of the land long after the street in front of it had been entered upon, occupied for railroad purposes, and inclosed as a right of way, with a fence, by the railroad company. The breaking of the close, if any was thereby committed, was an injury not to the possession of appellant, but to that of his grantor, who was then the owner. Such grantor seeing fit not to complain of any trespass by the railroad company, we are unable to perceive any legal principle which renders appellant competent to do so in his stead. Appellant bought the premises with the street along and in front of it occupied and in use by the railroad company as its right of way, and, by reason of the depreciation in the value of the land presumed to have been thereby occasioned, had the advantage of the decreased price. Presumably at least, the damages, as to him, have been

once paid, and to allow him to maintain this or any other action for the same cause would be to pay him such damages twice. The right of action, if any existed, was in the owner, immediately upon the commission of the injury or construction of the road, to recover all damages, past, present and future."

In the case of *Drake v. Howell*, 133 N. C. 162, 45 S. E. 539, the doctrine above announced was adopted, the court saying:

"There is an allegation in the pleadings that the plaintiffs have acquired the title to the Boitt tract since this action was commenced, but this, if true, cannot help them, as a conveyance of title to the land after the defendants had committed the alleged trespasses would not pass the right to the damages claimed by the plaintiffs; such damages are personal to the owner of the property, and do not pass to his grantees."

It will be observed that the petition alleges, and the uncontroverted testimony shows, that the only damage to the land of the plaintiff was occasioned by the act of the defendant in constructing the embankment and failing to provide proper and sufficient culverts to enable the surface water to run off as it had done before the construction of the embankment. There is neither allegation nor proof that plaintiff suffered damage by reason of the use and maintenance of the embankment by defendant, nor is it alleged or attempted to be shown by the evidence that said embankment was carelessly or negligently constructed or maintained. While the rule is well established that there may be as many successive recoveries as there are successive injuries caused by a permanent structure, when its construction and continuance are not in themselves necessarily injurious, yet, where the pleadings and evidence, as in the instant case, show conclusively that the permanent character of a railroad embankment, and its continuance as originally constructed, necessarily produced the injury to the freehold and caused the depreciation in the value thereof complained of at the time of construction, and that such injury had wholly occurred when plaintiff acquired the land, it must be held that she took it in its then known condition; and the issuance of a patent conveying to her such land did not confer upon her a right of action for the re-

covery of damages for injuries thereto occurring prior to her acquisition of title.

Under the evidence introduced to sustain the allegation of the second count of the petition it is disclosed that the plaintiff had rented said twenty acres of land for the years 1908 and 1909 for a portion of the crops to be produced thereon, and under the instructions of the court she was permitted to recover as rental the market value of one-third of the corn and one-fourth of the cotton destroyed.

In the case of *City of Ardmore v. Orr*, 35 Okla. 305, 129 Pac. 867, a suit for damages arising by reason of the city negligently failing to provide sewers adequate to convey surface waters and thereby collecting and causing such waters to overflow the premises of plaintiff, recovery was had for injury to the real property and also for depreciation in the rental value and loss of rents. In that case it was held that the defects in the sewers complained of were not permanent, but were remedial by the expenditure of money and labor, and that the proper measure of damages was the value of the personal property located in the building destroyed and the loss of rent resulting from a vacation of the building; and, in reversing the case, it was said:

"The language of the instructions given is so comprehensive as to authorize a recovery of both the loss for rents in the past, and in the future and for depreciation in the value of the property. In this the court committed error. * * * It would be like permitting one to recover the value of property as for conversion and at the same time to recover the value of the use thereof during the time he is deprived of it. If the damages of plaintiff are permanent, then the measure thereof is the value of the property destroyed, or the depreciation in the value of the property injured. The loss of rental value does not constitute part of damages where there is a permanent damage to the value of the property; and, where the damage is not permanent, only damages occurring up to the time of the action are recoverable, and all future damages that may occur must be recovered by subsequent actions, and it is the duty of the court to see that one does not overlap the other. *Seely v. Alden*, 61 Pa. 302, 100 Am. Dec. 642; *City of San Antonio v. Estate of Mackey*, 22 Tex. App. 145, 54 S. W. 33; Sutherland on Damages, sec. 1042. There is some confusion among the authorities upon the proper meas-

ure of damages in cases of the character of the instant case. The divergence arises in determining whether the particular nuisance or injury is permanent. If it is permanent, then the injured party may recover in one action all damages he has or may sustain as a result of the negligent construction of the improvements complained of; but, if it is not permanent, then he may recover only such damages as he has sustained up to the time of the institution of his action. Section 1039, Sutherland on Dam.; *Chicago, R. I. & P. Ry. Co. v. Davis,* 26 Okla. 434, 109 Pac. 214."

Loss or depreciation in the rental value of the land being a part of an incident to the permanent injury to the freehold, for which we hold plaintiff is not entitled to recover, it follows that she cannot maintain her action for damages claimed for loss of rents.

The judgment of the trial court is reversed, and the cause remanded. ·

All the Justices concur. except KANE, C. J., absent and not participating.