A97A2461. GENERALI — U. S. BRANCH v. SOUTHEASTERN SECURITY INSURANCE COMPANY.
(493 SE2d 731)

ELDRIDGE, Judge.

Appellant Generali — U. S. Branch ("Generali") is an insurer which paid an uninsured motorist claim to its insured based upon a written notice by appellee Southeastern Security Insurance Company ("Southeastern") to its insured denying coverage for misrepresentations in the application for insurance. Upon learning that Southeastern did have coverage, Generali sued to recover the sum paid on the uninsured motorist claim.

On March 13, 1995, Southeastern's insured rear-ended Generali's insured. In a letter dated March 23, 1995, Southeastern gave written notice to its insured, Aloma M. Bryan; Henry M. Kellum, the insured's attorney; and Melissa Wirdner, Graward General Insurance, the insured's agent, that coverage for the time of the collision was denied and the policy canceled because of misrepresentations in the insurance policy application.

Generali made no request of Southeastern regarding verification of coverage and relied upon the letter to Southeastern's insured and Southeastern's duty to amend the information under OCGA § 33-3-

28 (d). Generali paid the uninsured motorist benefits to its insured.

Generali sued Aloma M. Bryan under its subrogation claim and Southeastern on a direct action in negligence and fraud for failure to amend its original statement denying coverage after Southeastern's discovery that the facts stated in its denial of coverage were inconsistent with coverage; Generali asserted that it had relied to its detriment on the notice by paying the uninsured motorist benefits when Southeastern had coverage. Southeastern timely answered. On March 21, 1997, Southeastern filed a motion for partial summary judgment, based upon the lack of a right of subrogation for an uninsured motorist personal injury claim by Generali. On April 15, 1997, Generali filed a voluntary dismissal without prejudice as to defendant Bryan in order to make such motion moot. In Generali's response to the partial motion for summary judgment, filed the same day, it argued that the motion had been rendered moot by its dismissal of Bryan and that its direct action against Southeastern was based, not on subrogation but on negligence and fraud; it argued this position in the brief. On June 12, 1997, after hearing oral argument on June 9, the trial court granted summary judgment. Generali filed a timely notice of appeal.

1. The first, second, and fifth enumerations of error are that the trial court erred in granting summary judgment on theories of liability outside the scope of the motion for partial summary judgment, because such motion was made moot by the dismissal of Bryan. We do not agree.

The trial court can grant sua sponte summary judgment under Georgia law. *Solon Automated Svcs. v. Corp. of Mercer Univ.*, 221 Ga. App. 856, 859 (3) (a) (473 SE2d 544) (1996). In fact, the trial court can grant summary judgment to the "non-moving party provided that the grant is proper in all other respects. [Cit.]" *Golston v. Garigan*, 245 Ga. 450, 451 (1) (265 SE2d 590) (1980); see also *Eiberger v. West*, 247 Ga. 767, 770 (281 SE2d 148) (1981); *Rasmussen v. Nodvin*, 174 Ga. App. 203, 204 (1) (329 SE2d 541) (1985); *Wiggins v. C & S Nat. Bank*, 173 Ga. App. 761 (328 SE2d 222) (1985); *Massey v. Consolidated Equities Corp.*, 120 Ga. App. 165, 167 (1) (169 SE2d 672) (1969). "Accordingly, we conclude that, while in most cases it is better practice to await a motion for summary judgment before entering it for a party, it was not erroneous under the circumstances of this case, where the issues were the same as those involved in the movant's motion, hence the opposing parties had notice thereof, and where the nonmovant consented to the entry of summary judgment in his favor." *Cruce v. Randall*, 245 Ga. 669, 671 (266 SE2d 486) (1980). "If the record demands such a judgment, it would be proper." *DeMudd v. Atlanta Metro Taxi-Cab Group*, 172 Ga. App. 626, 627 (323 SE2d 910) (1984); see also *Howell Mill/Collier Assoc. v. Pennypacker's, Inc.*, 194

Ga. App. 169, 170 (1) (390 SE2d 257) (1990).

Thus, the trial court can grant summary judgment on any or all theories of liability, if justified by the record, although the movant asked only for a partial motion for summary judgment on less than all the theories of liability. The trial court had the inherent power to administer cases before the court and to deny at the hearing the oral motion for dismissal of the motion for partial summary judgment. Counsel intentionally rendered moot the pending motion by the voluntary dismissal without prejudice of the claim against Bryan in order to avoid the grant of partial summary judgment. At the scheduled hearing, the trial court then proceeded to decide, sua sponte, the remaining issues of liability as a matter of judicial economy on summary judgment.

The record fails to show that plaintiff made a motion in writing or gave prior notice, either oral or written, for the trial court to rule the partial motion for summary judgment moot prior to the hearing date and to remove the case from the motions calendar as moot. Plaintiff's counsel should have done this and had 51 days within which to do so prior to the hearing. See USCR 6.

"However, care should, of course, be taken by the trial court to determine that the party against whom summary judgment is rendered has had a full and fair opportunity to meet the proposition that there is no genuine issue of material fact to be tried, and that the party for whom summary judgment is rendered is entitled thereto as a matter of law. The crucial point is to insure that the party against whom summary judgment is sought has had a full and final opportunity to meet and attempt to controvert the assertions against him." (Citations and punctuation omitted.) *Howell Mill/Collier Assoc. v. Pennypacker's, Inc.*, supra at 170. In this case, the plaintiff had such notice and opportunity, because the plaintiff raised in its brief in opposition to the summary judgment the theories of direct action that the trial court ruled upon.

Generali sought to avoid the motion for partial summary judgment as to the subrogation claim by dismissing its claim against the insured tortfeasor Bryan in order to make its claim against Southeastern moot; at the same time, Generali continued to assert its theories of direct action in the responsive brief in opposition to the motion. The hearing on the motion for partial summary judgment came on June 9, 1997, some 51 days following Generali's response asserting its right to a direct action against Southeastern. The grant of the motion was not entered until June 12, 1997. Had plaintiff been without notice and truly surprised at the hearing by the issues raised, plaintiff could have requested to submit evidence after the hearing and prior to the ruling to perfect the record. *Rasmussen v. Nodvin*, supra at 204.

The record clearly shows that Generali had notice and ample opportunity to present its response to the motion prior to the hearing, as well as prior to the ruling. The issues presented in the motion went to the liability of Southeastern to Generali on subrogation, but Generali in its response asserted that the subrogation claim was moot and that it had rights of direct action. The trial court did not commit procedural error under the facts and circumstances of this case in treating a partial motion for summary judgment as a motion for summary judgment on all theories of liability and in refusing to deny the motion for partial summary judgment as moot.

2. The third enumeration of error is that the trial court erred in granting summary judgment. We do not agree.

(a) OCGA § 33-3-28 (d) creates no liability of an insurer to a claimant for failure to timely amend any previously furnished information from the insurer to the claimant, because failure to comply with the statute comes within the conduct subject to sanctions by the Insurance Commissioner as the exclusive regulatory remedy. OCGA §§ 33-3-19; 33-3-20. In passing Ga. L. 1989, p. 676, § 1, the General Assembly created OCGA § 33-3-28 as a regulatory statute. The caption, which identified and described the purpose of the act, states: "To amend Chapter 3 of Title 33 of the Official Code of Georgia Annotated, relating to authorization and general requirements for transactions of insurance, so as to provide that insurers who provide liability or casualty insurance coverage and the insured shall upon request of a claimant provide certain information to such claimant; to provide for related matters; to repeal conflicting laws; and for other purposes." Thus, the legislative intent was directory only and was not intended to create any cause of action in a claimant against an insurer for non-compliance.

(b) The alleged violation of OCGA § 33-3-28 (d) did not give rise to an action based on negligence per se. "A statute may create a duty recognized by law requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks, the breach of which constitutes what is sometimes called 'negligence.' Prosser & Keeton on Torts, 5th ed., § 30 (1984)." *Central Anesthesia Assoc. v. Worthy*, 254 Ga. 728, 733 (333 SE2d 829) (1985). "In determining whether the violation of a statute or ordinance is negligence *per se* as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against. [Cits.]" *Potts v. Fidelity Fruit &c. Co.*, 165 Ga. App. 546, 547 (301 SE2d 903) (1983); see also *Central Anesthesia Assoc. v. Worthy*, 173 Ga. App. 150, 153 (325 SE2d 819) (1984), aff'd, 254 Ga. 728. OCGA § 33-3-28 was not passed to guard against a "risk" or

"harm," and an insurer has no duty to protect a claimant against any specific harm; the act is directory to the insurers to assist claimants in gathering information, only.

(c) Southeastern, in making the representation to its insured and others, did not intend to induce reliance within the professional standard set forth in Restatement of Torts 2d, § 552 (1977), and such reliance was not reasonably foreseeable, so that Generali did not have an action for negligent misrepresentation as a third party. See *Robert &c. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680, 681-682 (300 SE2d 503) (1983); see also *Badische Corp. v. Caylor*, 257 Ga. 131, 132 (356 SE2d 198) (1987); *First Nat. Bank of Newton County v. Sparkmon*, 212 Ga. App. 558, 559 (442 SE2d 804) (1994); *Southeast Consultants v. O'Pry*, 199 Ga. App. 125 (404 SE2d 299) (1991). Furthermore, no misrepresentation was in fact made; the alleged basis for the tort action was the failure to later inform interested parties of a change in position by Southeastern. Such facts and circumstances fall outside the ambit of *Robert &c. Assoc. v. Rhodes-Haverty Partnership*, supra at 681-682.

(d) There was no evidence in the record before the trial court that the notice to Southeastern's insured was a material misrepresentation of fact, was made to induce reliance by Generali, or was made with the intent to mislead Generali. To the contrary, Generali contends that Southeastern's act of fraud was in not timely correcting its prior notice stating that there was no coverage, in order to reflect that there *was* coverage. However, the statement was correct when made, so that failure to correct was not actionable fraud, deceit, or concealment as a matter of law. Further, Generali produced no evidence that it exercised reasonable diligence to protect itself from harm; Generali had it within its own power to directly inquire of Southeastern regarding coverage prior to making any uninsured motorist claim payment. Generali is unable to show in the record any evidence that creates a disputed issue of fact as to one or more essential elements of fraud on the part of Southeastern or the exercise of reasonable diligence on the part of Generali. See *Eckerd's Columbia v. Moore*, 155 Ga. App. 4 (270 SE2d 249) (1980); *Tolar Constr. Co. v. GAF Corp.*, 154 Ga. App. 127 (267 SE2d 635) (1980), rev'd on other grounds, 246 Ga. 411 (271 SE2d 811) (1980); *Brown v. Ragsdale Motor Co.*, 65 Ga. App. 727 (16 SE2d 176) (1941).

(e) Generali lacked standing to bring any direct action against Southeastern in tort, because it was not directly harmed by any tortious act or omission by Southeastern and only indirectly suffered a loss. The right to bring a personal injury action, even for fraud, cannot be assigned or subrogated, except by statute. OCGA § 44-12-24; *Allen v. Macon, Dublin &c. R. Co.*, 107 Ga. 838, 845-846 (3) (33 SE 696) (1899); see also *Hayslip v. Speed Check Co.*, 214 Ga. 479, 482

(105 SE2d 455) (1958); *Morehead v. Ayers*, 136 Ga. 488 (71 SE 798) (1911); *Southern R. Co. v. Malone Freight Lines*, 174 Ga. App. 405, 409 (1) (330 SE2d 371) (1985); *American Chain &c. Co. v. Brunson*, 157 Ga. App. 833, 835 (278 SE2d 719) (1981); *James v. Emmco Ins. Co.*, 71 Ga. App. 196, 200 (30 SE2d 361) (1944). The cancellation notice went to Southeastern's insured and to counsel for Generali's insured; therefore, if any cause of action could arise, then it would be vested in either of these insured persons, who would have received a personal injury and not an injury to property that could not accrue to the benefit of Generali.

Thus, Generali has failed to create a material issue of fact as to the essential elements of any of his theories of direct action. Southeastern as a matter of law was entitled to summary judgment. *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

3. The issues of damages raised under enumerations of error 3 and 4 are controlled by Division 2, which finds that Southeastern was entitled to summary judgment as a matter of law.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 7, 1997.

*Steven E. Conner, Ronald W. Parnell*, for appellant.
*Hertz & Link, Houston D. Smith III*, for appellee.